UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SARA KNOWLTON, as Administrator of the Estate of BRIAN GARBER, Deceased c/o Hoffman Legal Group, LLC Attorneys at Law 24100 Chagrin Blvd., Suite 280 Cleveland, Ohio 44122<br><br>Plaintiff,<br><br>vs.<br><br>RICHLAND COUNTY, OHIO 38 South Park Street Mansfield, Ohio 44902<br><br>and<br><br>RICHLAND COUNTY BOARD OF COMMISSIONERS 38 South Park Street Mansfield, Ohio 44902<br><br>and | CASE NO.: 1:15-cv-00210<br><br>JUDGE: DAN AARON POLSTER<br><br>AMENDED COMPLAINT<br><br>(Jury Demand Endorsed Hereon) |

1

| | |
|---|---|
| RICHLAND COUNTY SHERIFF'S OFFICE<br>597 Park Avenue, East<br>Mansfield, Ohio 44905 | )<br>)<br>)<br>) |
| and | )<br>) |
| STEVE SHELDON, Sheriff<br>c/o Richland County Sheriff's Office<br>597 Park Avenue, East<br>Mansfield, Ohio 44905<br>(Individually and in his official capacity<br>as the Sheriff of Richland County<br>Ohio) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| RAYMOND FRAZIER<br>c/o Richland County Sheriff's Office<br>597 Park Avenue, East<br>Mansfield, Ohio 44905<br>(Individually and in his official capacity<br>as an employee of Richland County<br>Sheriff's Office) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| ANDREW KNEE<br>c/o Richland County Sheriff's Office<br>597 Park Avenue, East<br>Mansfield, Ohio 44905<br>(Individually and in his official capacity<br>as an employee of Richland County<br>Sheriff's Office) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| JAMES NICHOLSON<br>c/o Richland County Sheriff's Office<br>597 Park Avenue, East<br>Mansfield, Ohio 44905<br>(Individually and in his official capacity<br>as an employee of Richland County<br>Sheriff's Office) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| and | )<br>)<br>) |

| | |
|---|---|
| DONALD ZEHNER | ) |
| c/o Richland County Sheriff's Office | ) |
| 597 Park Avenue, East | ) |
| Mansfield, Ohio 44905 | ) |
| (Individually and in his official capacity | ) |
| as an employee of Richland County | ) |
| Sheriff's Office) | ) |
| | ) |
| Defendants. | ) |

## I. PRELIMINARY STATEMENT

1. This civil rights case challenges the fatal shooting of Brian Garber by Deputy Raymond Frazier, Deputy Andrew Knee and Sergeant James Nicholson of the Richland County Sheriff's office on March 16, 2014. Mr. Garber was unarmed and sitting on his bed in his parent's house when Defendants Frazier, Knee, and Nicholson rushed into his room and engaged him. Within a matter of seconds Defendants Frazier, Knee, and Nicholson opened fire on Mr. Garber shooting him 14 times. The Defendants' bullets struck Mr. Garber in the chest, abdomen, groin, hip, thigh, foot, and arm, killing him. Plaintiff brings this civil rights and state law action to secure fair compensation and to encourage Defendants and others to refrain from the unnecessary use of deadly force against civilians in the future.

## II. JURISDICTION

2. Jurisdiction over claims arising from Defendants' violations of the Civil Rights Act is conferred upon this Court by 28 U.S.C. § 1331, 1343 (3) and (4).

3. Jurisdiction over state law claims is conferred upon this Court by 28 U.S.C. § 1367. This action is brought pursuant to claims arising under the laws of the State of Ohio, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. This action is also brought pursuant to 28 U.S.C. §§ 1983, 1985, and 1988 as it is also an action for compensatory damages, punitive damages, and attorney fees.

4. Venue is proper in the Northern District of Ohio, Eastern Division, as all acts herein mentioned occurred in Richland County, Ohio. The decedent, Brian Garber, was a resident of Richland County, Ohio.

### III. PARTIES

5. Plaintiff Sara Knowlton is the duly appointed Administrator of the Estate of Brian Garber. Sara Knowlton was appointed by the Richland County Probate Court on June 27, 2014. She brings this action for the benefit of his heirs, and next of kin, including his minor children Hollie and Nicholas Garber.

6. Defendant Richland County, Ohio, is a unit of local government organized under the laws of the state of Ohio. Defendant Richland County, Ohio, is a "person" under 42 U.S.C. § 1983 and at all relevant times to this case acted under color of law.

7. Defendant Richland County Board of Commissioners is a unit of local government organized under the laws of the state of Ohio. Defendant Richland County, Ohio, is a "person" under 42 U.S.C. § 1983 and at all relevant times to this case acted under color of law.

8. Defendant Richland County Sheriff's Office is an entity which, at all pertinent times relevant to the allegations of this Complaint, employed Defendants Frazier, Knee, Nicholson, and Zehner. Defendant Richland County Sheriff's Office is a "person" under 42 U.S.C. § 1983 and at all relevant times to this case acted under color of law.

9. Defendant Steve Sheldon is the duly elected Sheriff of Richland County, and is being sued in his individual and his official capacity. Defendant Sheldon was, at all pertinent times, the supervisor of Defendants Frazier, Knee, Nicholson, and Zehner and was responsible for their employment, retention, training, supervision, and for all their conduct, especially while on duty and in the possession of firearms issued by Richland County Sheriff's Office. Defendant

Sheldon was also responsible for developing, implementing, and enforcing the regulations of the Richland County Sheriff's Office, and for ensuring that Defendants Frazier, Knee, Nicholson and Zehner obeyed the laws of the State of Ohio.

10. Defendant Raymond Frazier was at all times relevant to this action a law enforcement officer employed by the Richland County Sheriff's Office. Defendant Frazier is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as an employee of Richland County.

11. Defendant Andrew Knee was at all times relevant to this action a law enforcement officer employed by the Richland County Sheriff's Office. Defendant Knee is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as an employee of Richland County.

12. Defendant James Nicholson was at all times relevant to this action a law enforcement officer employed by the Richland County Sheriff's Office. Defendant Nicholson is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity as an employee of Richland County.

13. Defendant Donald Zehner was at all times relevant to this action a law enforcement officer employed by the Richland County Sheriff's Office. Defendant Zehner is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Defendant Zehner had direct supervision over a trainee, Defendant Knee. He is sued individually and in his official capacity as an employee of Richland County.

## IV. STATEMENT OF FACTS

14. Brian Garber was a 28 year old male who lived at 3425 Mill Run Road in Lexington, Ohio, with his wife, Sara Knowlton, daughter, Hollie Garber, and son, Nicholas Garber. He was a loving father who graduated from DeVry University, with honors, with the degree of Associate in Applied Science Electronics and Computer Technology.

15. At approximately 6:30 p.m. on March 16, 2014, Mr. Garber arrived home from work. He was with his mother, Connie Garber, who picked him up from his job at Oops, a technology repair store in Richland County, Ohio.

16. Mr. Garber stopped by his house to pick up a few items as he was planning on staying at his parent's house for the night. His parents, Connie and Matthew Garber, lived directly across the street from Mr. Garber's home at 3400 Mill Run Road in Lexington, Ohio.

17. At approximately 7:00 p.m. 911 was called as a result of a domestic issue that arose at Mr. Garber's house. Both Connie Garber and Plaintiff Sara Knowlton spoke to the 911 operator. During this phone call, Plaintiff Sara Knowlton informed the operator that she believed Mr. Garber may be intoxicated from his prescribed medication, Klonopin.

18. Defendant Knee, Defendant Zehner, and Deputy James Berry responded to the 911 call. On that day, Defendant Knee was a trainee under the direct supervision of Defendant Zehner.

19. Following the 911 call, but prior to the deputies' arrival, Mr. Garber left his residence on foot. At that time his whereabouts were unknown.

20. Once at Mr. Garber's residence, Defendants Knee and Zehner demanded that both Connie Garber and Plaintiff Sara Knowlton sign domestic violence affidavits.

6

21. Both Connie Garber and Plaintiff Sara Knowlton refused to sign domestic violence affidavits and informed Defendants Knee and Zehner that they simply wanted Mr. Garber to receive help and be taken to a hospital. During this conversation Defendants Knee and Zehner were informed multiple times that Mr. Garber may be under the influence of his prescribed medication, Klonopin.

22. Defendants Knee and Zehner continued to demand that the domestic violence affidavits be signed. Connie Garber and Plaintiff Sara Knowlton continued to refuse.

23. During this exchange, Mr. Garber's father, Matthew Garber, arrived. He too, felt that signing domestic violence affidavits was not what was needed. It was when he made his feelings known that Defendant Knee told Matthew Garber to stay out of the matter and instructed him to exit the home and wait outside.

24. Defendants Knee and Zehner informed Connie Garber and Plaintiff Sara Knowlton that the only way they would help get Mr. Garber to a hospital is if the domestic violence affidavits were signed. Otherwise, if they continued to refuse to sign the domestic violence affidavits, Defendants Knee and Zehner would throw Mr. Garber in jail when they found him. It was after these threatening statements that both Connie Garber and Plaintiff Sara Knowlton reluctantly agreed to sign the domestic violence affidavits.

25. Defendants Knee and Zehner and Deputy Berry searched the outside perimeter of the home before leaving. Mr. Garber was not found.

26. After Defendants Knee and Zehner and Deputy Berry left, Connie and Matthew Garber returned to their residence across the street. When the couple entered their home they noticed that Mr. Garber's shoes were lying in the doorway. Connie and Matthew Garber proceeded upstairs to Mr. Garber's childhood bedroom where they saw him sitting up on his bed.

Mr. Garber informed his parents that he allegedly had a gun and that he wanted to be left alone. Connie and Matthew Garber left the room and went back downstairs. Connie, with her grandchildren, Hollie and Nicholas Garber, proceeded across the road to Mr. Garber's residence where Plaintiff Sara Knowlton was.

27.   At approximately 8:15 p.m., Plaintiff Sara Knowlton called 911 a second time and informed the dispatcher that Mr. Garber was across the street at 3400 Mill Run Road and that he texted her that he had a gun. During this 911 call Plaintiff Sara Knowlton clearly informed the 911 dispatcher that Connie Garber, who just minutes prior was with Mr. Garber, did not believe that Mr. Garber was actually in possession of a gun.

28.   In response to Plaintiff Sara Knowlton's 911 call, Defendant Frazier, Defendant Knee (trainee), Defendant Nicholson, Defendant Zehner, and Deputy Berry responded to 3400 Mill Run Road. Deputy Berry remained outside while the Defendant Deputies proceeded inside.

29.   It is of information and belief that Defendants Frazier, Knee, Nicholson, and Zehner enter 3400 Mill Run Road through the door in the garage and entered on their own without the permission of Matthew Garber, who was the only other person at home.

30.   The officers asked Matthew Garber where they could find Mr. Garber. Matthew Garber stated he was upstairs in the second room on the left. Without asking any further questions Defendants Frazier, Knee (trainee), and Nicholson rushed upstairs.

31.   Defendant Zehner remained in the stairwell while his trainee, Defendant Knee, ran ahead of him. At no time did Defendant Zehner instruct, advise, or supervise his trainee, Defendant Knee.

32.   Within seconds of rushing up the stairs and engaging Mr. Garber, Defendants Frazier, Knee (trainee), and Nicholson open fired on Mr. Garber, killing him.

33. Mr. Garber was unarmed and alone sitting on his childhood bed at the time of the shooting. Mr. Garber posed no threat to the safety of the Defendant Deputies or anyone else. Mr. Garber was unarmed the entire day as well as when he was shot dead. Mr. Garber's greatest offense was a purported domestic dispute that was nearly two hours old.

34. In the seconds between when the Defendant Deputies entered the home, and when Mr. Garber was killed, no efforts were made to deescalate the situation.

35. Defendant Frazier fired the first shot and fired his gun a total of nine times.

36. Defendant Knee (trainee) fired his gun five times and Defendant Nicholson fired his gun two times.

37. Sixteen bullets were fired in total with fourteen of them striking Mr. Garber. Eight bullets were recovered from Mr. Garber's body and six exited. Defendants Frazier, Knee (trainee), and Nicholson acted so recklessly and out of control that bullets struck nearly every part of Mr. Garber's body. His body was riddled with bullet holes from his shoulders all the way down to the soles of his feet.

38. Following the shooting, Mr. Garber's room was searched in an effort to find a weapon of any kind.

39. No weapon was ever found. An object, later identified as a toy car remote control, was allegedly discovered somewhere in Mr. Garber's room. This toy car remote control was stored on the upper shelf of Mr. Garber's closet.

40. Defendants Frazier, Knee, and Nicholson had ample opportunity to safely initiate their encounter with Mr. Garber from a safe distance but instead chose to immediately enter Mr. Garber's room and engage him without regard for proper procedural protocol.

41. Defendants Frazier, Knee, and Nicholson had ample opportunity to provide clear and unhurried commands to Mr. Garber, whom they suspected may be armed and intoxicated, but instead charged into Mr. Garber's room and engaged him.

42. Defendant Zehner had ample opportunity to instruct his trainee, Defendant Knee, as to proper policy and protocol when dealing with an alleged armed suspect who may be intoxicated. Defendant Zehner instead failed to supervise his trainee, Defendant Knee, and allowed him to engage and open fire on Mr. Garber.

43. Had Defendants Frazier, Knee (trainee), and Nicholson properly approached Mr. Garber and properly investigated the situation they would undoubtedly have determined that Mr. Garber was unarmed as his mother Connie Garber believed him to be.

44. At all times relevant to this action, Defendants Frazier, Knee, Nicholson, and Zehner acted within the scope of their duties as employees of Defendant Richland County Sheriff's Office, Defendant Sheldon, Defendant Richland County, Ohio, and Defendant Richland County Board of Commissioners.

45. At all times relevant to this action, Defendants Frazier, Knee, and Nicholson acted unreasonably, negligently, recklessly, wantonly, willfully, knowingly, intentionally, and with deliberate indifference to the safety and rights of Mr. Garber when they used deadly force on March 16, 2014.

46. At no time did Defendants Frazier, Knee, Nicholson or Zehner have probable cause to arrest Mr. Garber.

47. Defendant Richland County Sheriff's Office, Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, and Defendant Sheldon's policies, practices, customs, and usages, or lack thereof, regarding the use of deadly force against non-

dangerous subjects were a moving force behind the use of deadly force that proximately caused Mr. Garber's suffering and death.

48. Defendant Richland County, Ohio, Defendant Richland County Sheriff's Office, Defendant Richland County Board of Commissioners, and Defendant Sheldon failed to adequately train and supervise Defendants Frazier, Knee (trainee), Nicholson, and Zehner regarding the use of force and that failure to train and supervise was a moving force behind the use of deadly force that proximately caused Mr. Garber's suffering and death.

49. Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, Defendant Sheldon, and Defendant Richland County Sheriff's Office hired Defendant Frazier in 2001 even after he was determined to be a significant risk for police duty. On May 29, 2001, a psychologist completed an assessment on Defendant Frazier for Defendant Richland County Sheriff's Office. The psychologist determined that Defendant Frazier was "at high risk for future performance difficulty and at high risk for termination based on the test results." The psychologist went on to state that he was "unable to give him a recommendation without *significant* qualifications." It was also recommended that if Defendant Frazier was to be offered a position with Defendant Richland County Sheriff's Office that his probationary period be extended and that he be "closely supervised" prior to being offered a permanent position.

50. Defendant Frazier has also been placed on administrative leave at least four times during his career with Defendant Richland County Sheriff's Office. It is of information and belief that the reason Defendant Frazier was placed on administrative leave on at least four separate occasions was due to his violent behavior and conduct at work, including but not limited to the use of excessive force.

51. By hiring, retaining, and failing to adequately train and supervise Defendant Frazier, who was in need of special training and close supervision, Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, Defendant Sheldon, and Defendant Richland County Sheriff's Office acted negligently, recklessly, intentionally, willfully, wantonly, knowingly and with deliberate indifference for the safety of citizens, including Mr. Garber.

52. Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, Defendant Sheldon, and Defendant Richland County Sheriff's Office hired Defendant Nicholson in 1994. On December 1, 1998, a psychologist completed an assessment of Defendant Nicholson for Defendant Richland County Sheriff's Office. The psychologist determined that Defendant Nicholson was "at high risk for future performance difficulty and at high risk for termination based on the test results." The psychologist also reported that "[t]here are also suggestions that he would be an overactive, restless, and impulsive individual at times. Some emotional adjustment difficulties are also suggested in the testing." Based on Defendant Nicholson's test scores, the psychologist could only recommend Defendant Nicholson for hire "conditionally and with reservations."

53. By hiring, retaining, and failing to adequately train and supervise Defendant Nicholson, who was at high risk for performance difficulty, Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, Defendant Sheldon, and Defendant Richland County Sheriff's Office acted negligently, recklessly, intentionally, willfully, wantonly, knowingly and with deliberate indifference for the safety of citizens, including Mr. Garber.

54. Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, Defendant Sheldon, and Defendant Richland County Sheriff's Office hired Defendant Knee on February 14, 2014. On March 16, 2014, the date of the shooting of Mr.

Garber, Defendant Knee was still in the training period of his employment and was under the supervision of Defendant Zehner. Defendant Knee was not adequately trained or supervised on March 16, 2014, when he, without the direction of his trainer, opened fired on Mr. Garber, an unarmed civilian.

55. By hiring, retaining, and failing to adequately train and supervise Defendant Knee, who was still in the training period of his employment, Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, Defendant Sheldon, and Defendant Richland County Sheriff's Office acted negligently, recklessly, intentionally, willfully, wantonly, knowingly and with deliberate indifference for the safety of citizens, including Mr. Garber.

56. Defendant Richland County, Ohio, Defendant Richland County Board of Commissioners, Defendant Sheldon, and Defendant Richland County Sheriff's Office ratified the excessive use of deadly force by Defendants Frazier, Knee and Nicholson.

57. As a direct and proximate result of the conduct of the Defendants, Mr. Garber suffered terror and fear as Defendants Frazier, Knee (trainee), and Nicholson rushed him brandishing their guns. Mr. Garber also suffered physical injury, pain, emotional and psychological trauma, and eventually died as a result of the use of deadly force described above.

58. As a further direct and proximate result of Mr. Garber's wrongful death, Mr. Garber's survivors, next of kin and/or heirs suffered permanent damages, including but not limited to grief, depression, and severe emotional distress. They have incurred funeral bills and other expenses and will continue to incur expenses into the future.

V. **FIRST CAUSE OF ACTION – 42 U.S.C. §1983 EXCESSIVE FORCE**

59. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

60. Defendants have, under color of law, deprived Mr. Garber of rights, privileges, and immunities secured to him by the Fourth and Fourteenth Amendments to the United States Constitution including the right to be free of seizures without probable cause and to be free of excessive force.

## VI. SECOND CAUSE OF ACTION – ASSAULT AND BATTERY

61. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

62. Defendants Frazier, Knee, and Nicholson intentionally and maliciously applied and threatened to apply unlawful and unnecessary force against Mr. Garber.

## VII. THIRD CAUSE OF ACTION – WRONGFUL DEATH

63. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

64. Defendants' actions caused the wrongful death of Mr. Garber resulting in damages recoverable under R.C. §2125.02.

## VIII. FOURTH CAUSE OF ACTION – 42 U.S.C. §1983 MONELL CLAIM FOR COUNTY CUSTOM AS MOVING FORCE BEHIND EXCESSIVE FORCE

65. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

66. It is the custom and practice of Richland County that supervisors do not supervise, coordinate or direct deputy/officer pursuits when they or their subordinates perceive some risk to one of their own.

67. As a result, Richland County Sheriff's deputies are granted unfettered discretion to pursue and subdue people they perceive as threats to fellow deputies however they choose in contravention of the Richland County Sheriff's Office's rules, regulations, policies and

procedures. This lack of communication, command, control, coordination, and supervision makes foreseeable excessive and unreasonable use of deadly force by deputies, including Defendants Frazier, Knee, and Nicholson.

68. The execution of this custom and practice inflicted a constitutional injury upon Mr. Garber. His Fourth Amendment right to be free from an unreasonable seizure and Fourteenth Amendment right to be free from excessive force were proximately caused by Richland County Sheriff's Office's custom of granting deputies the authority and unfettered discretion to conduct themselves however they saw fit, without concern for the results and repercussions of their conduct, including causing the death of unarmed citizens like Mr. Garber.

69. The custom described above amounts to deliberate indifference by supervisors, deputies, Richland County, Ohio, and Richland County Board of Commissioners to the constitutional rights of Mr. Garber with whom Defendants Frazier, Knee, and Nicholson came into contact with on March 16, 2014. The custom and deliberate indifference of supervisors, deputies, Richland County, Ohio, and Richland County Board of Commissioners were the moving force behind the constitutional violation.

## IX. FIFTH CAUSE OF ACTION – 42 U.S.C. §1983 FAILURE TO SUPERVISE

70. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

71. Defendants Sheldon and Zehner were responsible for supervising the Richland County Sheriff's Office subordinate deputies during the incident involving Mr. Garber on March 16, 2014.

72. Defendants Sheldon and Zehner acquiesced to their subordinates' violations of Mr. Garber's constitutional rights. Defendants Sheldon and Zehner acted with deliberate

indifference to the consequences of their failure to supervise, and established and maintained a policy, practice, and/or custom that granted deputies, including Defendants Frazier, Knee (trainee), and Nicholson, unfettered discretion in conducting themselves during and after the encounter with Mr. Garber, including during the use of excessive and unreasonable force against Mr. Garber.

73. Defendants Sheldon and Zehner's failure to supervise was the moving force behind the underlying constitutional violations suffered by Mr. Garber, as well as the violations of state law for assault and battery.

### X. SIXTH CAUSE OF ACTION – STATE LAW NEGLIGENT SUPERVISION

74. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

75. On March 16, 2014, Defendant Sheldon negligently supervised Defendants Frazier, Knee, Nicholson, and Zehner by permitting them to use excessive force and engage in police practices and conduct that foreseeably results in the application of excessive force.

76. Defendant Sheldon's conduct was willful, wanton, reckless, malicious, and in bad faith.

77. Mr. Garber's injuries and death were a proximate result of Defendant Sheldon's negligent supervision of Defendants Frazier, Knee (trainee), Nicholson and Zehner.

### XI. SEVENTH CAUSE OF ACTION – STATE LAW NEGLIGENT HIRING AND RETENTION

78. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

79. Defendants Richland County, Ohio, Richland County Board of Commissioners, Richland County Sheriff's Office, and Steve Sheldon knew and/or had constructive knowledge

that Defendants Frazier, Knee, and Nicholson were incompetent and not fit to perform law enforcement duties, including but not limited to the use of force, when they were hired as employees of Defendant Richland County Sheriff's Office.

80. Defendants Richland County, Ohio, Richland County Board of Commissioners, Richland County Sheriff's Office, and Steve Sheldon knew and/or had constructive knowledge that Defendants Frazier, Knee, and Nicholson were incompetent when performing their police duties and when using force. Defendants Frazier, Knee, and Nicholson violated departmental policies with respect to violent conduct and excessive force in the past and were not adequately disciplined by Defendants Richland County, Ohio, Richland County Board of Commissioners, Richland County Sheriff's Office, and Steve Sheldon.

81. Defendants Richland County, Ohio, Richland County Board of Commissioners, Richland County Sheriff's Office, and Steve Sheldon were negligent and acted willfully, wantonly, recklessly, maliciously, inadequately.

82. Mr. Garber's injuries and death were a proximate result of Defendants Richland County, Ohio, Richland County Board of Commissioners, Richland County Sheriff's Office, and Steve Sheldon's negligent hiring, and retention of Defendants Frazier, Knee, and Nicholson.

## XII. EIGHTH CAUSE OF ACTION – 42 U.S.C.§ 1983 RATIFICATION

83. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

84. Defendants Richland County, Ohio, Richland County Board of Commissioners, Steve Sheldon, and Richland County Sheriff's Office ratified the excessive use of deadly force by Defendants Frazier, Knee and Nicholson.

## XIII. NINTH CAUSE OF ACTION – SURVIVORSHIP ACTION

85. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

86. Mr. Garber experienced pre-death agony and conscious pain and suffering as a direct and proximate result of each Defendants' conduct.

## XIV. TENTH CAUSE OF ACTION – WILLFUL, WANTON, AND RECKLESS CONDUCT

87. The Plaintiff hereby incorporates by reference all of the allegations set forth in the foregoing paragraphs as if fully restated herein.

88. All of the Defendants, while engaged in police functions, failed to exercise due care and acted in a willful, wanton, and reckless manner. All of the Defendants acted in a willful, wanton, and reckless manner relative to the supervision, hiring, retention, situational assessment and intervention, and use of force involving Mr. Garber.

89. Each of the named Defendants, as set forth herein, engaged in negligent, reckless, willful, and wanton conduct, such they are not entitled to the immunities set forth in O.R.C. § 2744.01 *et seq.*

90. As a direct and proximate result of the negligent, reckless, willful, and wanton misconduct of Defendants, Mr. Garber sustained agonizing pain and suffering and was ultimately killed for which Plaintiff is entitled to punitive damages.

## XV. JURY DEMAND

91. Plaintiff requests a jury trial on all claims triable to a jury.

## XVI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court award:

A. Compensatory damages in an amount to be shown at trial;

B. Punitive damages against individual Defendants Raymond Frazier, Andrew Knee, James Nicholson, Donald Zehner, and Steve Sheldon (not the Richland County Sheriff's Office, County of Richland or Richland County Board of Commissioners) in an amount to be shown at trial;

C. Costs incurred in this action and reasonable attorney fees under 42 U.S.C. §1988;

D. Prejudgment interest; and

E. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**HOFFMAN LEGAL GROUP, LLC**

_____
**W. ANDREW HOFFMAN, III  (#0006680)**
**CHANCE G. DOUGLAS (#0087958)**
24100 Chagrin Blvd., Suite 280
Cleveland, OH  44122
(216) 292-5200
(216) 292-8766  (Fax)
ahoffman@hoffmanlegalgroup.com
cdouglas@hoffmanlegalgroup.com

**Attorneys for Estate of Brian Garber**