1                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF OHIO

2                       EASTERN DIVISION

3

    ELIZABETH GOODWIN,               Case No. 1:15-cv-210

4   *as Administrator of*         Cleveland, Ohio
    *the Estate of other*

5   BRIAN GARBER,

6         Plaintiff,

7     vs.                TUESDAY, FEBRUARY 12, 2019

8   RAYMOND FRAZIER,

9         Defendant.

10

11

12

13     TRANSCRIPT OF FINAL PRETRIAL CONFERENCE PROCEEDINGS
      BEFORE THE HONORABLE WILLIAM H. BAUGHMAN, JR.

14         UNITED STATES MAGISTRATE JUDGE

15

16

17

18

   Chief Court Reporter:     Sarah E. Nageotte, RDR, CRR, CRC

19                    United States District Court
                      801 West Superior Avenue

20                    Court Reporters 7-189
                      Cleveland, Ohio 44113

21                    (216) 357-7186

22

23

24

25   Proceedings recorded by mechanical stenography, transcript
   produced by computer-aided transcription.

1    **APPEARANCES:**

2
     For Plaintiff:          **TERRY H. GILBERT,** *Esquire*
3                            **JACQUELINE C. GREENE,** *Esquire*
                             Friedman & Gilbert
4                            55 Public Square
                             Suite 1055
5                            Cleveland, Ohio 44113

6                            **CHANCE G. DOUGLAS,** *Esquire*
                             Hoffman Legal Group
7                            24100 Chagrin Boulevard
                             Suite 280
8                            Beachwood, Ohio 44122

9

10   For Defendant:          **DANIEL T. DOWNEY,** *Esquire*
                             **MELANIE J. WILLIAMSON,** *Esquire*
11                           Fishel Downey Albrecht & Riepenhoff
                             7775 Walton Parkway
12                           Suite 200
                             New Albany, Ohio 43054
13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (Proceedings commenced at 1:15 p.m.)

 2                            - - -

 3              THE COURT:  Mr. DeVan, call the case.

 4              COURTROOM DEPUTY:  The case before the Court

13:16:27  5   today is 1:15-cv-210, Elizabeth Goodwin versus Raymond

 6   Frazier, et al.

 7              THE COURT:  Counsel for the plaintiffs, please

 8   state for the -- for the plaintiff, please state your

 9   appearances for the record.

13:16:46 10              MR. GILBERT:  Thank you, Your Honor.

11        My name is Terry Gilbert, along with Jacqueline Greene

12   and Chance Douglas for the plaintiff.

13              THE COURT:  And I should mention that for

14   purposes of this final pretrial, counsel may remain seated

13:16:59 15   when they address the Court; however, speak into the

16   microphones in front of you so that our court reporter can

17   pick up your comments.

18        And counsel for the defendants, please state your

19   appearances and introduce your clients.

13:17:10 20              MR. DOWNEY:  Thank you, Your Honor.

21        My name is Dan Downey and I'm here on behalf of Deputy

22   Knee, Deputy Nicholson, and Deputy Frazier.

23              MS. WILLIAMSON:  I'm Melanie Williamson.

24              THE COURT:  This is the final pretrial in this

13:17:23 25   case, the case being set for trial to begin on Tuesday,
```

1    February 19th.

2        We are going to discuss the trial and some issues that

3    remain to be worked out before trial, and I'm going to

4    proceed slowly here.  If you have any questions, then please

13:17:49  5    let me know.  I want to make sure we're all on the same

6    page.

7        I draw your attention initially to three orders that

8    have been filed in this case which will more or less set out

9    the ground rules for the trial.

13:18:04 10        The first one is ECF Number 113, the amended trial

11    order.

12        ECF Number 123, which is the supplemental trial order.

13        And entered today, ECF Number 129, it's a short order,

14    and it has to do with preparations to ensure that witnesses

13:18:31 15    are available to testify and the responsibilities with

16    respect to those preparations, both to opposing counsel and

17    to the Court.

18        Is there any questions concerning any of these orders?

19            MR. GILBERT:  Procedural question.

13:18:49 20            THE COURT:  Sure.

21            MR. GILBERT:  So I have to say, I was a little

22    bit surprised at the total ban on asking for sidebars during

23    the course of this trial.

24        I think that there are times in a trial where counsel

13:19:11 25    needs to ask for a trial -- a sidebar because of the

1    seriousness of the objection, which the Court may or may not

2    understand, and I would hope that the Court would trust the

3    lawyers, all of whom are very experienced, not to abuse that

4    privilege.

13:19:33  5    Sometimes things come -- could come in that are

6    prejudicial.  Sometimes things can come in that may be

7    grounds for a mistrial.  Without the ability to come to the

8    sidebar and briefly address those issues, so the Court is in

9    sync with what we're concerned about, it's not going to

13:19:58  10    delay this trial that much and it might avoid problems down

11    the road.

12    THE COURT:  First of all, it's not a total ban

13    on sidebars.  It merely provides -- the order merely

14    provides that if counsel want a sidebar, they're to request

13:20:12  15    it, and then the Court will determine whether or not to hold

16    it.

17    So it's not that there will never be a sidebar.  It's

18    merely that it must be requested, and I will immediately

19    make a decision as to whether or not I think I need it.

13:20:25  20    And I'm flexible.  You've tried a case --

21    MR. GILBERT:  Right.  When I read it --

22    THE COURT:  -- before me.

23    MR. GILBERT:  Where is that part about the

24    sidebars?

13:20:43  25    (Pause in Proceedings)

1          MR. GILBERT:  I'm sorry.  But when I read it,

2      I didn't notice the -- the ability to request one.

3                   THE COURT:  Right.

4                   MR. GILBERT:  I'm sorry.

13:20:52  5          THE COURT:  So I'll be reasonable.

6                   MR. GILBERT:  Yeah.

7                   THE COURT:  Any other questions about these

8      orders?

9                   MS. WILLIAMSON:  Your Honor, I have a

13:21:00 10    question.

11          Regarding voir dire, will the attorneys be permitted

12      to conduct follow-up examination based on the questions that

13      you ask?

14                  THE COURT:  Yes.  You're going to have

13:21:10 15    20 minutes to do whatever you want.

16                  MS. WILLIAMSON:  Okay.

17                  THE COURT:  Each side is going to have

18      20 minutes to do whatever they want.

19          I don't want to get anecdotal here, but I had the

13:21:21 20    experience of being called for jury duty over in state court

21      about three years ago, and, actually, did get called up,

22      called up with the panel.  I saw a very effective voir dire

23      done by an attorney there that was not argumentative, that I

24      thought was very helpful in providing information concerning

13:21:41 25    certain jurors, and that has somewhat affected my thoughts

1       on letting counsel have more time.

2           Usually, I give ten minutes.  But I'm going to give

3       20 minutes and we'll see how it goes.  So that -- yes, you

4       will be able to for 20 minutes, and if I feel like more time

13:22:05  5   is necessary, again, I'll be reasonable and consider giving

6       more time.  But at least 20 minutes to ask questions of --

7       of the panel.

8               MR. DOWNEY:  If I may, Your Honor, just for a

9       follow-up.

13:22:17  10      If -- say we're questioning a potential juror and

11      there's a need to do a sidebar where they come up, sit next

12      to you and the questions are asked, does that come out of

13      our time or how would that work?

14              THE COURT:  No.  It wouldn't come out of your

13:22:33  15   time.

16          I have had cases, especially criminal cases, where

17      there has been information that's been inquired about that

18      prospective jurors just don't want to speak about in open

19      court, and also there are some questions that shouldn't be

13:22:53  20   answered in open court because the experiences of the

21      jurors, that may affect their view of the case, is not

22      something that should be published to everybody.

23          So I had one situation where I felt like a priest in a

24      confessional because I had a line to the back of the

13:23:15  25   courtroom where people wanted to talk to the Court and

1    counsel confidentially.

2        And so, that will be provided for and we'll -- we'll

3    just have to see how it goes.

4            MR. DOWNEY:  If I may, Your Honor, one other

13:23:30  5    question just about timing.

6        I've only done a couple of these where we timed them,

7    and my experience was that the Court issues an order at the

8    end of the day indicating how much time each --

9            THE COURT:  And that's exactly what we'll do.

13:23:41 10    We'll tell you how much time you've used.

11        Any other questions concerning the governing pretrial

12    orders here that the Court's entered?

13        All right.  Let's -- let's start with voir dire.

14        The parties have proposed questions for the Court to

13:23:59 15    ask, and all of these questions seem to be reasonable, and I

16    will have either already worked them into the questions that

17    I prepared, or I will work them into the questions that I

18    prepared.

19        And then, after I'm -- I'm finished, the -- there will

13:24:25 20    be the opportunity for counsel to question the potential

21    jurors.

22        We're bringing up a panel of 30.  We'll seat eight.

23    And they will be arranged in the courtroom.  Every juror

24    gets a number, every potential juror gets a number, and we

13:24:51 25    start with the -- the low numbers in the box, and then it

1    will extend back into the courtroom.  But we'll make sure

2    that everyone knows exactly what the -- what the seating is

3    and where the jurors can be located.

4         The other practice that we have in this court, and you

5    may be aware of this, is that for purposes of privacy, we do

6    not use their names.  We refer to them by number.  It's very

7    impersonal.  This was put in some time ago, and, quite

8    frankly, I wish it were otherwise.  But if a transcript of

9    the voir dire is prepared and we use names, then all that

10   would have to be redacted.

11        So in order to avoid -- avoid to having to do manual

12   redaction by the court reporter, we just refer to them by

13   number.  So even though you will have their names, please

14   don't refer to them by their names, refer to them by their

15   numbers.

16        There will be the standard jury questionnaire that

17   they will complete and counsel will have a copy, and I'll

18   give you some time to look that over before we get started.

19        All right.  And the standard questionnaire is an

20   appendix to the local rules, so if you need -- if you want

21   to see it and refresh your recollection as to what that

22   consists of, then take a look there.  And if for some reason

23   you can't find it, contact Kyle and he'll make sure you get

24   a copy in advance of the trial.

25        There's something else I wanted to say about jury

         1    selection.  Oh, it will come to me.  I think I covered all

         2    of it, unless you have any questions.

         3                   MR. GILBERT:  Judge, do you have --

         4                   THE COURT:  Mr. Gilbert.

13:26:49  5                   MR. GILBERT:  Do you have a standard

         6    preliminary instruction for the jury?

         7                   THE COURT:  Yes, I do.

         8                   MR. GILBERT:  I assume it's just the basic?

         9                   THE COURT:  It's just standard --

13:26:58 10                   MR. GILBERT:  Yeah.  Okay.

        11                   THE COURT:  -- basic standard instruction.

        12         And the -- there will be an introductory instruction,

        13    and then, after the jury is impaneled, then there will be

        14    another introductory instruction before opening statements.

13:27:18 15                   MR. GILBERT:  And the preliminary statement

        16    that we have agreed to --

        17                   THE COURT:  Yes.  I wanted to talk to you

        18    about that as to when you think it's most appropriate to

        19    read that stip -- yes, your agreed-to opening statement will

13:27:36 20    be part of the instruction.

        21         But I want to talk to you also in the course of this

        22    pretrial about your stipulation and when you think it would

        23    be most appropriate to read that to the jury.  So we'll get

        24    to that.

13:27:49 25         The procedure for challenges for cause and peremptory

1  challenges are set forth in my order.  I'm going to give

2  three peremptories to each side.  And we'll pass the sheet.

3  It's all in there.  It's all in my order.  If you have any

4  questions about it, I'll be happy to entertain it, but I

13:28:17  5  think it's the procedure that most of the judges in this

6  court use for purposes of peremptory challenges.

7  All right.  We'll then go into opening statements.

8  20 minutes per side.  And that is in addition to your 10

9  hours, not part of your 10 hours.  And I trust that you will

13:28:43  10  be -- give them a roadmap as to what the evidence will show.

11  You won't be argumentative, et cetera, and so forth.  We all

12  know what the ground rules are for opening statement, so I

13  don't have to repeat that.

14  Now, with respect to the stipulation, since it's come

13:29:02  15  up, this stipulation will be read to the jury.

16  Does counsel have -- have thoughts about when it would

17  be most appropriate to read it?

18  MR. GILBERT:  Well, I think it should be read

19  maybe to the entire panel because there may be people who

13:29:24  20  might feel uncomfortable sitting on a case like this.

21  I'm just thinking that at some point before the voir

22  dire that that statement might -- the jury may want to know

23  what the case is about, the prospective jury.

24  THE COURT:  Yes.  And what you've agreed to

13:29:50  25  is -- it's fairly general.

1          MR. GILBERT:  Right.

2          THE COURT:  Right.

3          MR. GILBERT:  I mean, you know, I can imagine

4    somebody may think:  Well, I'm never going to sit on a case

13:30:03  5    where the police are involved.  Or I can never be able to be

6    fair in a case like this.

7         I hope it doesn't turn out to that, but it's possible.

8          MR. DOWNEY:  If I may, Your Honor.

9         I think the points Mr. Gilbert brings up are addressed

13:30:19 10    in the voir dire questions both parties have submitted.  In

11    my experience, stipulations or a statement would be read to

12    the jury after they've been impaneled prior to opening.

13    That's just been my experience and I think it's worked

14    appropriately.

13:30:30 15         I don't think that either side would want to

16    necessarily have somebody biased in a certain way before the

17    Court's had an opportunity to question them, from our

18    perspective.

19          MR. GILBERT:  I've been reminded that in

13:30:54 20    proposed voir dire questions, that's addressed.

21         So I'll withdraw that comment.

22          THE COURT:  Okay.  I don't think it's

23    necessary to read the stipulation as part of the voir dire.

24    It may be worthwhile to read it -- read the stipulation

13:31:11 25    prior to opening statement, and then, at the close of all

1 the evidence, read it again to emphasize that these are

2 facts that have been agreed to by the parties and they are

3 to consider them as having been proven for purposes of this

4 case.

13:31:28 5      MR. DOWNEY:  We agree, Your Honor.

6      THE COURT:  All right.  So that's the way

7 we'll proceed with that.

8  So we have opening statement.  And then -- and then,

9 we're going to go forward with plaintiff's case, followed by

13:31:41 10 defendants' case.

11  I want to make sure that -- that I have the witness

12 lists, and I know that they were filed early on, but nothing

13 has been filed recently in terms of witnesses that the

14 parties intend to present.

13:32:02 15  So is there a document that was previously filed that

16 represents -- or documents previously filed on the docket

17 that represent what -- the list that each party -- list of

18 witnesses that each party intends to call?

19      MR. GILBERT:  There is.

13:32:23 20  There is, Judge, a witness list that we filed on

21 November 29th.

22      THE COURT:  And what's the ECF Number on that?

23      MR. GILBERT:  Number 105.

24      THE COURT:  105.

13:32:38 25  And for the defendants?

1          MS. WILLIAMSON:  Doc 49.

2          THE COURT:  49?

3          MS. WILLIAMSON:  Yes.

4          MR. GILBERT:  But I would say that we are in

13:32:50  5  the process of reducing that, given the -- obviously, the --

6  some of the orders you --

7          THE COURT:  Right.

8          MR. GILBERT:  -- and other reasons --

9          THE COURT:  And that's the point for my

13:33:02  10  inquiry.  The lists I would expect to be impacted by the

11  rulings in limine.

12      And could you each have an updated list for the Court

13  prior to the beginning of trial?

14          MS. WILLIAMSON:  Yes, Your Honor.

13:33:21  15          MR. DOWNEY:  We'd prefer, Your Honor, if it

16  was sooner than that, just so -- from a preparation

17  standpoint.

18          THE COURT:  Right.  So how about by Thursday?

19          MR. GILBERT:  How about Friday?

13:33:33  20          THE COURT:  Friday.  Okay.  By Friday to file

21  an updated list of witnesses for each.

22      And I have the -- I have the same question concerning

23  exhibits.  You recently filed your Joint Exhibit list.

24  That's ECF Number 124.  But I don't recall any updated

13:34:13  25  exhibit lists being filed.

1          So what is the most updated exhibit list for each of

2   the parties?

3                    MR. GILBERT:  I mean, it would be the same.

4                    THE COURT:  It would be part of 105?

13:34:30   5          MR. GILBERT:  Well, we have 106 and 124.

6                    THE COURT:  106 and 124?

7                    MR. GILBERT:  The 124 is the Joint Exhibit

8   list.

9                    THE COURT:  All right.  And is it different

13:34:40  10   from what you just filed?

11                    MR. GILBERT:  No.  This was -- the Joint

12   Exhibit list is what we just filed today.

13                    THE COURT:  All right.  That's 124.

14                    MR. GILBERT:  124.

13:34:51  15          THE COURT:  Okay.  So --

16                    MR. GILBERT:  Our Plaintiff's Exhibit --

17                    THE COURT:  Plaintiff's list was 106.

18                    MR. GILBERT:  106, and that was filed

19   November 29th.

13:35:01  20          THE COURT:  All right.

21                    MR. GILBERT:  And we're still evaluating the

22   exhibits.

23                    THE COURT:  Okay.

24                    MR. GILBERT:  Mainly because of your order

13:35:08  25   limiting certain witnesses.

1          THE COURT:  Right.

2          And defense -- defense counsel, what is your most

3  recent witness [sic] list?

4          MR. DOWNEY:  He said exhibit list.

13:35:28  5          MS. WILLIAMSON:  Yes.  I'm looking.

6              (Pause in Proceedings)

7          MS. WILLIAMSON:  Doc 72.

8          THE COURT:  72.

9          And it makes sense to me for both of you to do an

13:35:47  10  updated list by Friday.

11          MR. GILBERT:  I would just add, Judge, that a

12  lot of the documents here and items are not necessarily

13  going to be offered into evidence but might be used for

14  impeachment, which you cannot always know.

13:36:06  15          THE COURT:  Right.  You can't anticipate.

16          MR. GILBERT:  Right.

17          THE COURT:  But I think at least that it's

18  helpful to have them identified prior to trial.

19          MR. GILBERT:  Right.

13:36:13  20          THE COURT:  All right.  So, by Friday, counsel

21  are to file the updated lists of exhibits.

22          All right.  I do want to emphasize what I put in the

23  latest order that I entered, which was the order of today,

24  about anticipating who is going to be testifying.

13:36:52  25          I have used this practice consistently and have found,

1   number one, that counsel are very cooperative in this

2   regard, which has always been refreshing; but, two, I have,

3   except perhaps in very rare circumstances, had a situation

4   where we've had dead time, and so, I would appreciate your

13:37:14  5   efforts and your cooperation in making sure that the time

6   that we set aside to hear testimony, that witnesses are here

7   and they're ready to go.

8       All right.  And, again, I will emphasize that.  Two

9   things:  Number one, we'll deal with exhibits at the close

13:37:43  10   of your respective cases, and that, however, to the extent

11   you want the exhibit published to the jury, that it will

12   have to be with leave of the Court.  So you will ask to

13   publish it, and then, if there's some question about whether

14   it should be published, then I can take it up at that time.

13:38:14  15       All right.  The trial is going to go forward in

16   Courtroom 17B.  It has all the electronic capability that we

17   have here at the court.  And although I prefer the

18   Magistrate Judge's courtrooms, unfortunately, we are not

19   necessarily state of the art, even down on 9 where we do

13:38:36  20   have more technology than we have up here.  So this will be

21   up in 17B.

22       And as I understand it, counsel are making

23   arrangements with Mr. DeVan to come over and to inspect the

24   courtroom and to try out the equipment in advance of the

13:38:56  25   trial, and I suggest that you do that so that we don't have

1    technical problems that -- that take place during the course

2    of the trial.

3         All right?

4              MR. GILBERT:  Sorry.  Just one other question,

13:39:29  5    Judge.

6         In opening and closing statements, do you require

7    counsel to be at the podium?

8              THE COURT:  No.  As a trial lawyer, I always

9    preferred to have some latitude.  You don't want to get up

13:39:48 10    in the jury's face, and I'm not going to let you do that,

11    but, certainly, you can move away from the podium.

12         And when I tried cases, I moved away from the podium

13    every opportunity that I had and positioned myself in the

14    courtroom strategically.

13:40:05 15         So I'm --

16              MR. GILBERT:  I think that would also go for

17    the voir dire because --

18              THE COURT:  Right.

19              MR. GILBERT:  All right.

13:40:12 20              THE COURT:  Right.  Now, the only caveat is

21    the court reporter has to hear you.

22              MR. GILBERT:  Exactly.

23              THE COURT:  So if we're having some --

24              MR. GILBERT:  They have to hear the jury.

13:40:23 25              THE COURT:  And we can check and have a

1    microphone.  There is a portable mic.  So if that's a

2    problem with -- with the audio being heard throughout the

3    courtroom, and especially by the court reporter, then we can

4    make arrangements for that.  So that's a good question.  I'm

13:40:41  5    glad you brought that up.

6         Certainly, if you prefer to just do all of your

7    questioning and examination and cross-examination from the

8    podium, and your opening and closing, that's your -- you

9    know, that's your decision.

13:40:58  10         MR. DOWNEY:  Thank you, Your Honor.

11         I had one other question procedural.

12         Mr. Gilbert and I had talked yesterday about Ms.

13    Knowlton being called in their case on Thursday and that it

14    would be preferable if she comes up once for the trial, and

13:41:12  15    Mr. Gilbert was agreeable to me I think examining her in his

16    case.

17              THE COURT:  Right.  With agreement of counsel,

18    if -- if you want to have a witness only testify once,

19    then -- then you can do that.  I understand that that makes

13:41:34  20    sense for a number of reasons and that would mean -- so

21    there would also be examination by the other side that would

22    be complete and cover everything that the witness would

23    testify to, even if the witness were called back as part of

24    the defendants' case, so --

13:41:53  25              MR. GILBERT:  Yeah.  We have no problem with

1    that.

2              THE COURT:  All right.  So as long as you're

3    in agreement with respect to any witness that you believe

4    that's suitable for, then that's fine with me.

13:42:07  5              MR. DOWNEY:  Thank you, Your Honor.

6              THE COURT:  Okay.  Mr. Gilbert, you filed a

7    motion today?

8              MR. GILBERT:  Yes, we did.

9              THE COURT:  And there hasn't been a response

13:42:22  10   on it, of course, yet.

11       I want to focus on -- on the first part of your

12   motion:  Crime scene photographs.

13             MR. GILBERT:  So --

14             THE COURT:  Well, I've read your brief.

13:42:43  15             MR. GILBERT:  Okay.

16             THE COURT:  And let me just say this:  Perhaps

17   the compromise here is to permit one black and white photo

18   taken by the Richland County Sheriff's Office that shows the

19   position of the remote in relationship to the body.  Not

13:43:14  20   color.  Black and white.

21       So with respect to that, I'll hear you first, and then

22   I'll hear defense -- defense counsel.

23             MR. GILBERT:  Right.  I mean, I think you

24   understand the importance of the location of the body and

13:43:29  25   the remote.

```
 1                      THE COURT:  Well, you've set it out and I --

 2                      MR. GILBERT:  Yeah.  And it's --

 3                      THE COURT:  And that's certainly facts that

 4        you are -- that you are free to develop during the course of

 5        this case.

 6                      MR. GILBERT:  And we need the photographs in

 7        order to do that.

 8            Also, we don't think that this picture is particularly

 9        gruesome.  I mean, frankly, it looks like somebody is

10        sleeping.

11                      THE COURT:  Well, especially in black and

12        white.  I think that really takes the edge off of it and I

13        don't see what color adds to it.

14                      MR. GILBERT:  But we need two.  We need two

15        photographs.  One is --

16                      THE COURT:  Why do you need two?

17                      MR. GILBERT:  Because there is -- because

18        there -- one picture has -- was taken earlier, before the

19        EMS --

20                      THE COURT:  Yes.

21                      MR. GILBERT:  -- representative came.

22                      THE COURT:  Wouldn't that be the most

23        probative of the three photographs you have?

24                      MR. GILBERT:  Well, there's a reason why we

25        want both.
```

1          Because of the stickers on the body that are for the

2     electrodes that were found -- that were placed on the

3     decedent by the EMS technician that arrived named Richard

4     Compton who is going to be testifying, when he came in,

13:44:47  5     he -- he administered the first aid or heart monitor to

6     determine if Mr. Garber was alive.

7          The --

8               THE COURT:  So what does the photograph with

9     the electrodes add?

13:45:06 10               MR. GILBERT:  Because -- because the --

11     because nobody, among the three defendants, need -- nobody

12     in the room between the time of Brian Garber's shooting

13     until a prosecutor came in the room, at this point where the

14     numbers are and the electrodes are, to say that they saw a

13:45:34 15     remote.

16               THE COURT:  Well -- but this photograph taken

17     by the Richland County Sheriff's Office was earlier in time

18     and the remote's there.

19               MR. GILBERT:  Right.

13:45:45 20               THE COURT:  And it appears to be -- it appears

21     to be more or less in the same position in the ones taken by

22     BCI.

23               MR. GILBERT:  Right.

24               THE COURT:  So I don't see what that adds.

13:45:53 25               MR. GILBERT:  Well, we feel that it could have

1    been -- it could have been moved at some point during the --

2    during this period of time.

3         And there are different perspectives as to where the

4    officers were standing that we need to have the middle one,

13:46:19  5    because it shows the -- a broader picture of the room with

6    the body on it.

7         And I'm not -- I'm not going to argue the whole case

8    right now.

9              THE COURT:  Okay.  I understand.  I

13:46:33 10    understand.

11              MR. GILBERT:  Trust me --

12              THE COURT:  I want to hear from the other

13    side.

14              MR. GILBERT:  Right.  But I'm not done yet,

13:46:36 15    okay?

16              MR. DOWNEY:  I plan to argue the whole case,

17    Your Honor.  No.

18         We think that the Court was correct in its initial

19    ruling, Your Honor.  The defense perspective about the

13:46:49 20    remote is that there is other evidence that links it to Mr.

21    Garber at the time of the shooting through Matthew Garber

22    observing it under his shirt.

23         We feel like delving into the remote, the location of

24    the remote, is just another attempt to sort of circle back

13:47:04 25    into the conspiracy theory about the remote being planted

1    when there's absolutely no evidence of that.  And as the

2    Court noted, the photographs both show it.

3         So from our perspective, this is not something that

4    would be helpful to the jury, and potentially prejudicial if

13:47:20  5    the plaintiff is given latitude to pursue that line at

6    trial.

7         And also, Your Honor, we did just receive their --

8    their reconsideration this morning at 10:00.  There are --

9    you know, we would prefer the opportunity to respond in

13:47:34  10    writing as well, if the Court was inclined to permit that,

11    so that we could file a document of record.

12         Although, I would understand the Court's position that

13    this has been in addressed in prior motions and a prior

14    ruling.

13:47:46  15              THE COURT:  I think it has.

16         And as I say, I think a reasonable compromise is to

17    let the one photo, which has 101-1411, in in black and white

18    form.

19         And it's the earliest photo that was taken.  It shows

13:48:01  20    the remote.  It shows the remote in relationship to the

21    body.  And then each side can -- can make their arguments

22    respectively.

23         So --

24              MR. DOWNEY:  Your Honor, would you mind

13:48:18  25    repeating that number on that photo?

```
              1              THE COURT:  101-1411.

              2              MR. DOWNEY:  Thank you, Your Honor.

              3              MR. GILBERT:  So there is -- how will that be

              4     transformed from -- do you want us to do the black and

13:48:33      5     white?

              6              THE COURT:  Yes.  I can --

              7              MR. GILBERT:  Maybe lighten it up a little bit

              8     so you can see it better?

              9              THE COURT:  Well, it's the position of the

13:48:42     10     remote to the body.  Certainly -- certainly, it would be

             11     acceptable just to have it this way.  But I know from my

             12     iPhone, I can hit a black and white option and it converts a

             13     color into a black and white --

             14              MR. GILBERT:  All right.

13:48:57     15              THE COURT:  -- so it can be done.

             16         And as far as the second part of this motion, I think

             17     that it has been -- the trajectory presentation, that's been

             18     briefed and argued and my ruling stands.

             19              MR. GILBERT:  Well, can we put something on

13:49:18     20     the record at least?

             21              THE COURT:  Sure.

             22              MR. GILBERT:  Okay.

             23              THE COURT:  Go ahead.

             24              MR. GILBERT:  So, I mean, we don't understand

13:49:24     25     the reasoning of the Court because this is a demonstrative
```

1    exhibit.  It's not going to be offered into evidence.  It's

2    going to be used as -- as a guide for the jury.

3        And the Court can give a cautionary instruction

4    about -- that it's just like an opening statement or

13:49:47  5    PowerPoint presentation, it's what we believe the evidence

6    will show.  If we can't prove that trajectory in the -- in

7    our case in chief, then the defendant could -- could send it

8    back at us and argue that they put something in that wasn't

9    accurate.

13:50:08 10        Also, we are willing to bring in the person who

11    created the trajectory based on the diagram from Lisa

12    Kohler, the medical examiner, that's in the evidence, and

13    the angles of those trajectories are the exact same angles

14    that were in the autopsy report and described in the autopsy

13:50:34 15    report.

16                    THE COURT:  The parties -- the parties have

17    stipulated that the proximate cause of Mr. Garber's death

18    were the shots fired by the three officers.

19                    MR. GILBERT:  Yeah.  But the positions of

13:50:46 20    where the three defendants were when they shot is -- is very

21    important, and the other -- and the defendants never agreed

22    to even put that in the stipulation of fact.

23                    THE COURT:  Well, you have the x-rays.

24                    MR. GILBERT:  What's that?

13:51:00 25                    THE COURT:  The x-rays are in.

1          MR. GILBERT:  Right.  But it -- the jury

2    should -- can see better the idea of the position of the

3    defendants when they shot and the angle of the bullets.

4        I mean, it's important to show the trajectory.  It's

13:51:21  5    important to show who might have fired the various shots

6    into which part of the body.  There's no prejudice here to

7    anybody.  I don't see how the defendant is -- is in any way

8    harmed by that.

9        If they don't think it's accurate, they can argue that

13:51:39  10    it isn't.

11          THE COURT:  Well, the shots were the prox --

12    were the proximate cause of Mr. Garber's death, so why do we

13    have --

14          MR. GILBERT:  Are they willing to stipulate to

13:51:54  15    that --

16          THE COURT:  They stipulated to that before

17    Judge --

18          MR. GILBERT:  -- that each defendant fired

19    shots that caused the death of --

13:52:02  20          THE COURT:  I think they've stipulated to

21    that.

22          MR. GILBERT:  Are they -- I want to know from

23    them right now, are they willing to stipulate to that?

24          THE COURT:  Okay.

13:52:09  25          MR. GILBERT:  Because they never have.

1          THE COURT:  Is that what you stipulated?

2    That's how I understood the record.

3          MR. DOWNEY:  It's not, Your Honor.

4      Deputy Nicholson's gun jammed, and we don't know

13:52:20  5    whether a bullet from Deputy Nicholson's entered -- we

6    agreed that Mr. Garber tragically passed away as a result of

7    being shot and these officers were present.

8      And, you know, from our perspective, Your Honor, and

9    Ms. Williamson is prepared to address the arguments again

13:52:35  10   regarding, you know, the -- the demonstrative, as Mr.

11   Gilbert calls it, that we believe is founded in basically

12   bringing in an expert after the fact and addressing location

13   and trajectory when it's not really an issue in the case and

14   never was when the case was pending in a discovery period.

13:52:54  15     So from our perspective, you know, and Ms. Williamson

16   can address Dr. Kohler as well --

17          MS. WILLIAMSON:  And --

18          THE COURT:  Well, again, I think Mr. Gilbert's

19   question is a fair one.

13:53:05  20     Are you stipulating that the proximate cause of Mr.

21   Garber's death is the gunfire from the -- from the three

22   deputies?

23          MR. DOWNEY:  I think we have --

24          THE COURT:  Or are you going to say that one

13:53:23  25   didn't fire at all because the gun was malfunctioning?

1          MR. DOWNEY:  They all fired.  We just know his

2    -- that two bullets went out of I think Deputy Nicholson's

3    gun.  I use that as an example.

4          I think the stipulation we put as a matter of record,

13:53:36  5    Your Honor.  I would refer back -- to the Court to that.  I

6    mean --

7                    THE COURT:  What's --

8                    MR. DOWNEY:  -- I don't want to say something

9    inconsistent with the record, but I believe it's in the

13:53:44 10    record what we stipulated to.

11                    THE COURT:  When you say the record, are you

12    talking about the transcript --

13                    MR. DOWNEY:  Correct.

14                    THE COURT:  -- before Judge Polster?

13:53:52 15                    MS. WILLIAMSON:  Yes.

16                    MR. DOWNEY:  Yes.

17                    THE COURT:  Well, as I read the transcript,

18    proximate cause was stipulated.

19                    MR. DOWNEY:  Correct, Your Honor.

13:53:56 20                    THE COURT:  So, therefore, that isn't a

21    question.

22                    MR. GILBERT:  We don't want to be in a

23    situation where they ambush us at the end of the trial and

24    say:  You didn't prove that Nicholson caused the death, and,

13:54:07 25    therefore, he should be dismissed out of the case.

1          I mean, if we're going to get into piecemealing each

2     of the defendants and whether they caused the death of Brian

3     Garber, then we need the trajectory to show how it lines up

4     with the -- the position of the -- of the defendants when

13:54:26  5     they fired their guns.

6                    THE COURT:  Well, fair enough.

7          But all you need to -- all you need is a verdict

8     against one, right?

9          And then you can recover all the damages that you can

13:54:37  10     prove by a preponderance of the evidence.  That's my

11     understanding of how this works.

12                    MR. GILBERT:  Well, I mean, I think that

13     the -- that's a nice consolation prize, but -- but, you

14     know, the --

13:54:54  15                    THE COURT:  Why -- why is it a consolation

16     prize?

17                    MR. GILBERT:  We have three defendants who

18     used excessive force when they shot and killed Brian Garber

19     with a barrage of shots that were -- we say are

13:55:08  20     unjustifiable.  There are three defendants in this case.  We

21     have the burden of proof.  We should give -- we should be

22     given some latitude to try to explain to the jury

23     graphically how that lines up with the three defendants.

24                    THE COURT:  Well, are we really going to get

13:55:26  25     into that in this trial, saying -- trying to determine,

1    based on trajectory, which bullets came out of which weapon,

2    and, therefore, which shots were fatal and which weren't?

3    Like the Brelo case.  That's not what's going to happen

4    here, is it?

13:55:44  5              MR. GILBERT:  Well, I don't know what their --

6    they're not willing to commit.

7                   THE COURT:  Well, I'm asking you.

8                   MS. WILLIAMSON:  Your Honor, I'd just like to

9    bring to the Court's attention, plaintiff's counsel have

13:55:55 10   indicated that Dr. Kohler, the medical examiner, would be

11   here to explain and this is all based upon her diagram.

12        She has been deposed in this case.  They did not, with

13   their motion, submit her testimony as support, but in her

14   deposition testimony, she indicated that she cannot make an

13:56:14 15   assessment of where -- of where the body was at the time of

16   the injury.  She can only say here's where the injuries were

17   because a body is mobile.  And so, she can't make that

18   determination.

19        She also indicated in her deposition testimony that

13:56:29 20   she can't make an assessment as to where the officers were

21   standing at the time.  So I'm not quite sure how she can

22   come in here and be useful to the plaintiffs.

23                   THE COURT:  Well, my question is this:  Is

24   this all relevant?  Are you going to, at the end of the day,

13:56:45 25   say that some officers should -- should not -- not be found

1    liable because there's not proximate cause?

2                    MR. DOWNEY:  No.  We stipulated to proximate

3    cause, Your Honor.  This is --

4                    THE COURT:  Across the board.

13:57:00  5                    MR. DOWNEY:  This case is about whether or not

6    there was excessive force.

7                    THE COURT:  Whether or not there was excessive

8    force, not proximate cause.

9                    MR. DOWNEY:  Correct.

13:57:07  10                    THE COURT:  So we're not going to see a

11    parsing out among the three officers of whose shot was fatal

12    and whose wasn't fatal.

13                    MR. DOWNEY:  That's correct, Your Honor.

14         There were 16 shots fired.  That's the record in the

13:57:19  15    case that we have.

16                    THE COURT:  And that was my understanding

17    after reading Judge Polster's transcript.

18                    MR. DOWNEY:  We believe that the force used

19    was appropriate.  Mr. Gilbert believes it wasn't.

13:57:29  20                    THE COURT:  So I believe that that's not going

21    to be an issue in the case and I'm not going to permit the

22    evidence.  There's better use of our time here.

23         Now, we have some time before we get into instructions

24    and verdict forms, and I've taken a look at -- I have it

13:57:54  25    here.  Let me just find it.  There's a lot of documents up

1    here.  ECF Number 85-2, the parties' proposed jury

2    instructions.  And there's -- as I recall, there's another

3    document that has verdict forms that I've seen but I don't

4    have here.

13:58:28  5    And there's a very useful index here that has all the

6    ones that have been agreed to and all of the ones that each

7    party has submitted that have not been agreed to.

8    There is a reference to the instructions given by then

9    Chief Judge Oliver, I believe, in *Smith versus Jones*,

13:59:02  10    1:13-cv-744.  And comparing the two, it appears that,

11    essentially, the ones that are not contested are

12    substantially similar to the sum total of the instructions

13    given in *Smith versus Jones*, that also being an excessive

14    force case.  Although, there, apparently proximate cause was

13:59:30  15    at issue where it isn't here.

16    So my question is:  Why don't we just go with what you

17    agreed with?  Why is that not sufficient?

18    And, in fact, I have some extra copies of *Smith versus

19    Jones,* and I'll give those to you so you can look at those.

13:59:49  20    MS. GREENE:  Judge, I'm sorry.

21    I'm afraid I don't understand the question you're

22    asking.

23    THE COURT:  All right.  That was a long

24    question.  It was a compound question.

13:59:56  25    So point number one, in an excessive force case, Judge

1     Oliver -- and that case being *Smith versus Jones*,

2     1:13-cv-744, the jury instructions being ECF Number 82 --

3     Judge Oliver instructed the jury on liability and damages,

4     and I believe this is the case where present counsel for the

14:00:33  5     plaintiff was also representing the plaintiff.

6              MR. GILBERT:  That's correct.

7              MS. GREENE:  That's correct.

8              THE COURT:  That's correct.

9          All right.  So you're familiar with these

14:00:41 10    instructions --

11             MR. GILBERT:  Right.

12             THE COURT:  -- or at least you were at one

13     point in time familiar with these instructions.

14         And, in fact, I believe you cite these instructions

14:00:50 15    as -- as the legal basis for some of the instructions that

16     have been proposed.  So that's point number one.

17         Point number two, in comparing what Judge Oliver gave

18     in *Smith versus Jones* with what you have agreed to, jointly

19     proposed jury instructions, that they -- what he gave and

14:01:18 20    what you've agreed to appear to be substantially similar

21     with respect to both liability and damages.

22         And my question is then -- it appears to be

23     comprehensive.  His instructions in *Smith versus Jones* make

24     sense to me.  Why do we really need to get into these

14:01:42 25    instructions where -- where you can't agree?  Why not just

1    go with something substantially similar to what Judge Oliver

2    did in *Smith versus Jones*, which is -- which is, for the

3    most part, what you've agreed to?

4                    MS. GREENE:  Judge, plaintiff would be willing

14:02:01  5    to accept --

6                    THE COURT:  Excuse me?

7                    MS. GREENE:  Plaintiff would be willing to

8    accept something substantially similar to the *Smith v.*

9    *Jones*.

14:02:10  10                    THE COURT:  I don't expect you to make a

11    commitment today, but take it into consideration.

12                    MS. WILLIAMSON:  Thank you.

13                    THE COURT:  Let me just say that, as is clear,

14    what we basically have here is a Section 1983 excessive

14:02:24  15    force claim, and we have a state assault and battery claim,

16    and we have a wrongful death claim, and we have a survivors

17    claim.  But I do want to ask about the survivors claim.

18        I've read quite a bit of case law in the last few days

19    to put all the pieces together, and the case law in this

14:02:50  20    circuit seems clear to me that this state law assault and

21    battery claim, the liability standard, is the same as for

22    excessive force.  And so, therefore, to give two

23    instructions on two different claims is potentially

24    confusing to the jury.  And I don't know whether that was

14:03:11  25    what Judge Oliver was thinking in *Smith versus Jones*, but

1       what he did here makes sense to me.

2           And as you take a look at ECF Number 82, what he did

3       was he instructed on excessive force, and then he instructed

4       on damages for survivorship and wrongful death, and there's

14:03:31  5     nothing in here about assault and battery because,

6       basically, the standard is the same, so -- the standard for

7       liability is the same.

8           So take that under consideration.  We're going to

9       revisit this as the trial -- as we get to that point in

14:03:47 10    trial, but it seems to me that what Judge Oliver did here is

11      a very well -- is a very well-crafted set of instructions

12      and they're very clear and plain and provide a roadmap for

13      the jury to work its way through this.  It doesn't confuse

14      them.

14:04:04 15        And if you want jury interrogatories, if -- if they're

16      taken off of the instructions that Judge -- and I believe he

17      may have given interrogatories in that case, too, you can

18      check the docket and I'll check the docket -- but I believe

19      that the approach he took here is -- is a constructive,

14:04:24 20    helpful one, and is -- and it's certainly worthy of

21      consideration and would get us to where we needed to be

22      here.

23          All right.

24              MR. GILBERT:  Judge, I would note, I don't

14:04:39 25    think we have an assault claim.

1          Is that right?

2                    MR. DOWNEY:  I think that's right.

3                    THE COURT:  You don't have an assault and

4    battery claim?

14:04:45  5                    MR. GILBERT:  No.  We just have a reckless --

6                    THE COURT:  Well, reckless is not a

7    freestanding cause of action.  That's clear.

8                    MR. GILBERT:  No.  It's a negligence, with a

9    higher burden, under the state statute.

14:04:58 10                    THE COURT:  I took a look at your pleadings,

11   and I -- and unless I'm really misreading it, I think you

12   pled an assault and battery claim.

13                    MR. GILBERT:  I think we might -- if we did,

14   we're going to dismiss it.

14:05:14 15                    THE COURT:  All right.

16                    MR. GILBERT:  We didn't have them --

17                    THE COURT:  All right.  So that makes it even

18   easier.

19                    MR. GILBERT:  All right.

14:05:19 20                    THE COURT:  And that -- and with that, it

21   makes more sense to go with what Judge Oliver does.

22                    MR. GILBERT:  Right.  Reckless is the -- the

23   negligence claim --

24                    THE COURT:  Yeah.  It's not freestanding.  But

14:05:30 25   I understand what you're saying.

                    MR. GILBERT:  Yeah.

                    THE COURT:  And I understand what you're

saying.  If it isn't -- if it isn't liability under

excessive force, if it doesn't rise to that level, then it

14:05:39  drops down to mere negligence and its -- and its immunity.

        Objectively and reasonable is the buzzword for -- and

the instructions that Judge Oliver gave and the instructions

that you're proposing seem to be right on point with respect

to excessive force, so it's -- it's up or down on excessive

14:06:01  force, and if it's a finding of excessive force, then --

then you go ahead and take a look at wrongful death and

survivorship.

        You're maintaining a survivorship claim?  There were

damages prior to death?

14:06:15                    MR. GILBERT:  Yes.

                    THE COURT:  Okay.  All right.  Well, that's

certainly your prerogative to pursue that and prove it and

then --

                    MR. GILBERT:  You know, everything is subject

14:06:22  to the end of the case.

                    THE COURT:  Oh, I understand that.

                    MR. GILBERT:  So we'll want to have a -- we

want to have a short conference anyway after the evidence is

in.

14:06:29                    THE COURT:  Well, that's right.

1          MR. GILBERT:  Right.

2          THE COURT:  That's right.  That's why I'm

3    not -- I'm throwing this out for your consideration --

4          MR. GILBERT:  Many things can change.

14:06:37  5          THE COURT:  -- and I'm not saying that I'm

6    casting -- I'm casting the instructions --

7          MR. GILBERT:  Yeah.

8          THE COURT:  -- and the interrogatories in

9    stone at this point.  It depends on how it comes in.  And

14:06:48 10    we'll see.  We'll see at that point.

11      But I -- I think it's worthy to think about it now,

12    worthwhile to think about it now, and to be looking to Judge

13    Oliver to see if, in fact, that's a template that fits this

14    case.

14:07:07 15      All right.  Any other questions?

16          MR. DOWNEY:  Your Honor, on days where we're

17    in trial, is there the possibility to speak to the Court

18    prior to starting?  Do you want the --

19          THE COURT:  Oh, we'll definitely do that.

14:07:17 20    Yeah, we're definitely going to do that, because I'm going

21    to want to go over the agenda for the day, see who is going

22    to testify, and where we're at.  Yeah, so that goes without

23    saying.  I think I say be here by 8:30.

24          MR. DOWNEY:  Right.

14:07:34 25          THE COURT:  And the jury will be seated at

1    9:00, and I'll come on the bench at 8:30, and we'll go over

2    the day.

3                    MR. DOWNEY:  If I may, Your Honor.

4         I think, based on the Court's order, we'd likely get

14:07:45  5    to witnesses on day one.  Has that been your experience as

6    well with your order?

7                    THE COURT:  Should be, unless something

8    unusual goes on in the voir dire.

9         So we'll have the voir dire.  Hopefully we can have

14:07:55 10    the jury seated within a reasonable period of time, have

11    opening statements, and then start with the witnesses.

12                    MR. DOWNEY:  Thank you, Your Honor.

13                    THE COURT:  All right.  Okay.  Anything

14    further for the plaintiff?

14:08:07 15                    MR. GILBERT:  Yes, Your Honor.

16         A couple of -- a couple of issues --

17                    THE COURT:  Yes.

18                    MR. GILBERT:  -- of clarification.

19         So the Court issued an order that would exclude, in

14:08:23 20    terms of the question of liability, only those facts which

21    the defendants knew at the time that they confronted Brian

22    Garber.

23         But in dialogue and discussions with defense counsel,

24    a couple things had come up.  One was prior attempted

14:08:53 25    suicides, and another was the mental health history of Brian

1    Garber.  All of this could come in from family members or

2    medical records.

3              THE COURT:  With respect to damages?

4              MR. GILBERT:  Well, this is what we want to

14:09:15  5    make sure is clarified.

6         We weren't sure in your order about the attempted

7    suicide, whether that was for damages or for liability.  It

8    wouldn't seem to fit the liability because the defendants

9    wouldn't have known that.

14:09:35  10              THE COURT:  Right.  Right.

11              MR. GILBERT:  All right.

12              THE COURT:  I --

13              MR. GILBERT:  So because this is -- this might

14    have to do with damages, that we have -- we have a

14:09:45  15    cautionary instruction --

16              THE COURT:  Anything --

17              MR. GILBERT:  -- of some kind.

18              THE COURT:  -- admitted strictly for purposes

19    of damages, I'll give a cautionary instruction.

14:09:56  20              MR. GILBERT:  Okay.

21              THE COURT:  I realize there's some, perhaps,

22    gray areas out there where that's going to be appropriate.

23              MR. GILBERT:  Yeah.

24              THE COURT:  I didn't think there was enough of

14:10:06  25    a problem to bifurcate the trial, but --

1              MR. GILBERT:  Yeah.  And --

2              THE COURT:  And -- and, again, I'm just going

3    to ask the question here.

4         With respect to -- assuming that there's a finding of

14:10:20 5   liability under the -- under the wrongful death, who -- who

6    are the persons who are really going to be claiming that

7    they're damaged?  Is it -- it's certainly the children,

8    right?

9              MR. GILBERT:  Yes.  Certainly the children.

14:10:33 10             THE COURT:  In addition to the children, who?

11             MR. GILBERT:  Well, it could -- it would also

12   be the parents and the wife.  But mainly the children.

13             THE COURT:  Okay.  All right.  Well, with

14   respect to the --

14:10:55 15             MR. GILBERT:  Again --

16             THE COURT:  With respect to his wife, I

17   suppose that opens up a --

18             MR. GILBERT:  Yeah.

19             THE COURT:  -- a number -- a number of

14:11:03 20  problematic areas.

21             MR. GILBERT:  Right.  And we will talk about

22   that further --

23             THE COURT:  All right.

24             MR. GILBERT:  -- those issues.

14:11:10 25             THE COURT:  Okay.  Well, the leaner and

1    cleaner this is, the better.

2              MR. GILBERT:  Agreed.

3              THE COURT:  All right.

4              MR. DOWNEY:  If I may, Your Honor.

14:11:19  5        Just to Mr. Gilbert's point about, you know, Mr.

6    Garber's prior attempted suicides, we know that he's a

7    troubled individual, but one issue from the defense

8    standpoint that could potentially impact on motive when he

9    was in the room with the officers with what he was doing is

14:11:35  10   that he had attempted suicide in that very room a year

11   earlier.

12        And I feel that that is something that might be

13   probative as to what he was attempting to accomplish at the

14   time that the officers were interacting --

14:11:45  15             THE COURT:  But that didn't factor into the

16   equation of why the officers did what they did.  They didn't

17   know that.

18              MR. DOWNEY:  Thank you, Your Honor.

19              THE COURT:  All right.  So I'll just leave it

14:11:56  20   at that.

21        All right.  Anything else, Mr. Gilbert?

22              MR. GILBERT:  Just consulting with my --

23              THE COURT:  All right.  Certainly.

24              MR. GILBERT:  -- partner here.

14:12:20  25        I think -- I know when we walk out of the courtroom,

```
 1    we're going to think of something else.

 2                  THE COURT:  Well, it's -- it's not over.

 3                  MR. GILBERT:  But we'll let you know.

 4                  THE COURT:  It's not over until it's over.

 5                  MR. GILBERT:  Right.  Right.

 6                  MR. DOWNEY:  The defendants will stipulate

 7    it's been a productive day, Your Honor.

 8        We have nothing additional.

 9                  THE COURT:  Excuse me?

10                  MR. DOWNEY:  It's been a productive day, and

11    we have nothing additional.

12                  THE COURT:  All right.  Very good.

13        I do want to talk -- well, obviously, there's still

14    the question of settlement.

15        We spent a day and were not able to settle the case

16    before, but I want to talk to each counsel, so just remain

17    here after I go off the bench and Mr. DeVan will bring you

18    in.

19                  MR. GILBERT:  Thank you, Judge.

20                  THE COURT:  And we'll just touch base on that

21    question.

22                  MR. DOWNEY:  Thank you, Your Honor.

23                  THE COURT:  There being no further business

24    before the Court, we are in recess.

25                  COURTROOM DEPUTY:  All rise.
```

1                            - - -

2              (Proceedings concluded at 2:13 p.m.)

3

4

5

6                   **C E R T I F I C A T E**

7        I certify that the foregoing is a correct transcript
   of the record of proceedings in the above-entitled matter
8  prepared from my stenotype notes.

9            */s/ Sarah E. Nageotte*              *4/10/2019*
             SARAH E. NAGEOTTE, RDR, CRR, CRC          DATE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25