552

1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
2                         EASTERN DIVISION

3    ------------------------------X
     ELIZABETH GOODWIN, *As*        :  Case No. 1:15-cv-00210
4    *Administrator of the Estate*  :  Cleveland, Ohio
     *of* BRIAN GARBER,             :
5                                   :  Friday, February 22, 2019
                 Plaintiff,         :  9:01 a.m.
6                                   :
          v.                        :  **VOLUME 4 - JURY TRIAL**
7                                   :  *(Pages 552 - 624)*
     RICHLAND COUNTY, OHIO, et      :
8    al.,                           :
                                    :
9                Defendants.        :
     ------------------------------X

10

11              TRANSCRIPT OF JURY TRIAL PROCEEDINGS

12         BEFORE THE HONORABLE WILLIAM H. BAUGHMAN, JR.

13                UNITED STATES MAGISTRATE JUDGE

14

15

16
     Court Reporter:            Donnalee Cotone, RMR, CRR, CRC
17                              Realtime Systems Administrator
                                United States District Court
18                              801 West Superior Avenue
                                Court Reporters 7-189
19                              Cleveland, Ohio 44113
                                216-357-7078
20                              donnalee_cotone@ohnd.uscourts.gov

21

22

23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer-aided transcription.

1    APPEARANCES:

2

3            On behalf of Plaintiff Elizabeth Goodwin, *As*
             *Administrator of the Estate of Brian Garber*:
4
                     **TERRY H. GILBERT, ESQ.**
5                    **JACQUELINE C. GREENE, ESQ.**
                     Friedman & Gilbert
6                    55 Public Square,  Suite 1055
                     Cleveland, Ohio 44113
7                    216-241-1430
                     tgilbert@f-glaw.com
8                    greene@f-glaw.com

9

10           On behalf of Plaintiff Elizabeth Goodwin, *As*
             *Administrator of the Estate of Brian Garber*:
11
                     **CHANCE G. DOUGLAS, ESQ.**
12                   24100 Chagrin Boulevard
                     Suite 280
13                   Cleveland, Ohio 44122
                     216-292-5200
14                   cdouglas@hoffmanlegalgroup.com

15

             On behalf of Defendant *Richland County, Ohio*, et al.:
16
                     **DANIEL T. DOWNEY, ESQ.**
17                   **MELANIE J. WILLIAMSON, ESQ.**
                     7775 Walton Parkway, Suite 200
18                   New Albany, Ohio 43054
                     614-221-1216
19                   ddowney@fisheldowney.com
                     mwilliamson@fisheldowney.com
20

21

22   ALSO PRESENT:            Deputy Raymond Jeffrey Frazier
                              Deputy Andrew Knee
23                            Deputy James Nicholson

24

25

1                          **I N D E X**

2                                                              **PAGE**

3       APPEARANCES....................................... 553

4       PRE-JURY COLLOQUY................................. 555

5       JURY CHARGE...................................... 558

6       CLOSING STATEMENT BY GILBERT..................... 580

7       CLOSING STATEMENT BY MR. DOWNEY.................. 593

8       REBUTTAL STATEMENT BY GILBERT.................... 601

9       CONCLUSION OF JURY CHARGE........................ 606

10      JURY QUESTION.................................... 617

11      JURY VERDICT..................................... 621

12      POLLING OF THE JURY............................. 622

13      REPORTER CERTIFICATE............................ 624

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              MORNING SESSION, FRIDAY, FEBRUARY 22, 2019
 2                   DEPUTY CLERK:  All rise.
 3                          -  -  -
 4              (Proceedings reconvened at 9:01 a.m. )
 5              (In Open Court - Jury Not Present)
 6                     (Defendant Present)
 7                          -  -  -
 8              DEPUTY CLERK:  Please be seated.
 9              THE COURT:  Good morning.
10              ALL EN MASSE:  Good morning, Your Honor.
11              THE COURT:  I have been presented with the
12      parties' stipulations of fact with jury instructions and
13      with the verdict form.
14          It's my understanding that jury instructions and the
15      verdict form are the product of consultation between
16      counsel, and that the form of the instructions and the
17      verdict form are acceptable to counsel, with all previously
18      stated objections being reserved.
19          And so let me ask counsel for the plaintiff.
20          Are the stipulations, the jury instructions, and the
21      verdict form, as they have been presented to me, acceptable
22      in form to the plaintiff?
23              MS. GREENE:  They are, Judge, with reserving
24      all the prior objections.
25          Thanks.
```

Line timestamps: 09:01:14 (5), 09:01:43 (10), 09:02:10 (15), 09:02:32 (20), 09:02:47 (25)

1          THE COURT:  And the same question for counsel

2     for the defendant.

3          Are the stipulations, jury instructions, and verdict

4     form acceptable in form, reserving all objections previously

09:03:00  5     made, to the defendant?

6          MS. WILLIAMSON:  That's correct, Your Honor.

7          THE COURT:  I will now call in the jury.  I

8     will first read the stipulations of fact, then I'll give the

9     instructions.  And following the instructions, there will be

09:03:20  10     closing argument by counsel limited to 30 minutes per side.

11          The jury will then be sent back to deliberate.

12          The other point I wanted to make, there was a question

13     yesterday given to me as to whether or not the jury

14     instructions can be used in closing argument, and they

09:03:50  15     certainly may.  That's why I'm giving the instructions to

16     the jury before argument.  So to the extent you wish to

17     refer to the instructions, you may do so.

18          Are there any questions before we bring in the jury?

19          MS. WILLIAMSON:  Your Honor, do we have hard

09:04:05  20     copies of the final instructions for counsel?

21          THE COURT:  I have one copy.

22          MS. WILLIAMSON:  Oh, okay.

23          THE COURT:  All right?

24          I was under the assumption that what I was being given

09:04:21  25     was a copy of what you had worked on.

1          So do we need another copy?

2          We can get another copy.

3              MS. WILLIAMSON:  Yes, Your Honor, if we may.

4          Thank you.

09:04:31  5              THE COURT:  I don't know whether the copy

6     machine is working or not.

7          But anything else?

8              MR. DOWNEY:  Thank you, Your Honor.

9              THE COURT:  You have the stipulations and the

09:04:52 10     verdict form?

11         All right.  So all you need is the instructions.

12             MS. WILLIAMSON:  Yes.

13             THE COURT:  All right.

14         And plaintiff's counsel, you have everything?

09:05:01 15             MR. GILBERT:  Yes.

16             THE COURT:  Stipulations, instructions, and

17     verdict form?

18         All right.

19                  (Pause in proceedings.)

09:07:06 20             THE COURT:  Thank you.

21             MS. WILLIAMSON:  Thank you.

22             MR. DOWNEY:  Thank you.

23             MS. GREENE:  Thank you.

24             THE COURT:  Anything further from counsel

09:07:22 25     before we bring in the jury?

```
  1              MR. DOWNEY:  No, Your Honor.

  2              THE COURT:  Mr. DeVan, please bring in the

  3      jury.

  4              DEPUTY CLERK:  All rise for the jury.

  5              (The jury entered the courtroom.)

  6              DEPUTY CLERK:  Please be seated.

  7              THE COURT:  Good morning, ladies and gentlemen

  8      of the jury.

  9          You have now heard all of the testimony and seen all

 10      of the exhibits that relate to the matter to be decided in

 11      this case, and I will instruct you on the law that you will

 12      apply in reaching your verdict.

 13          But before I do so, the parties have entered into

 14      certain stipulations of fact that I'm about to read to you.

 15      You are to consider these facts as established and not in

 16      dispute for purposes of this case.

 17          And I will read from the stipulation.

 18          The parties, through counsel, submit the following

 19      stipulations of fact, as if proven in trial:

 20          First, on March 16th, 2014, Defendant Raymond Frazier

 21      and deputies Andrew Knee and James Nicholson were employees

 22      of the Richland County Sheriff's Office.

 23          Second, Brian Garber and Sara Knowlton were married in

 24      2010.

 25          Three, Brian Garber and Sara Knowlton are the parents
```

1    of two minor children, Holly and Nicholas Garber.

2         Four, on March 16, 2014, Brian Garber and

3    Sara Knowlton resided at 3425 Mill Run Road, Lexington,

4    Ohio.

09:11:16   5         Five, Matthew and Connie Garber are the parents of

6    Brian Garber.

7         Six, Matt Garber and Connie Garber reside at 3400 Mill

8    Run Road, Lexington, Ohio, across the street from Brian and

9    Sara's home.

09:11:40  10         Seven, Brian Garber was the only child of Matthew and

11   Connie Garber.

12         Eight, at approximately 7:10 p.m., on March 16, 2014,

13   Richland County sheriff Deputy Knee and Lieutenant

14   Donald Zehner received a call via dispatch to respond to

09:12:04  15   3425 Mill Run Road concerning a domestic violence incident.

16         Nine, upon arriving at the residence, Officers Knee

17   and Zehner spoke with Connie Garber, mother of Brian Garber,

18   and Sara Knowlton, wife of Brian Garber.

19         Ten, Brian Garber was not at the residence when

09:12:27  20   Richland County Officers Knee and Zehner arrived.

21         11, officers searched the surrounding area for Garber,

22   but did not find him.

23         12, all Richland County officers who had responded to

24   the domestic violence incident left the residence and the

09:12:50  25   surrounding area.

Jury Charge

560

1    13, approximately an hour after the first call,

2   Richland County Sheriff's Office received a second call

3   through dispatch that Garber had been located.

4    14, Officers Knee, Zehner, Frazier, Nicholson, and

09:13:09  5   James Berry responded to 3425 Mill Run Road.

6    15, once on Mill Road, Richland County Sheriff's

7   Office officers learned that Garber was at his parents' home

8   at 3400 Mill Run Road.

9    16, once at 3400 Mill Run Road, Sergeant Nicholson,

09:13:40 10   the shift supervisor, took the lead.

11    17, Officers Nicholson, Knee, and Frazier entered the

12   house.

13    18, the officers went upstairs with Sergeant Nicholson

14   in the lead position, followed by Officers Knee and Frazier.

09:14:01 15    19, Officers Nicholson, Knee, and Frazier proceeded

16   down the hallway to the upstairs bedroom, the last door on

17   the left.

18    20, other officers, including Zehner, also entered the

19   home, but did not proceed to the bedroom.

09:14:21 20    21, Sergeant Nicholson had a back-and-forth exchange

21   with Brian Garber for approximately 45 seconds to 1 minute.

22    22, Brian Garber was 28 years old at the time of his

23   death.

24    23, at all relevant times to this case,

09:14:46 25   Defendant Raymond Jeffrey Frazier was acting under color of

1    state law.

2         24, Defendant Frazier fired gunshots that proximately

3    caused the death of Brian Garber.

4         I will now read to you the instructions on the law

09:15:11 5    that you will apply in reaching your verdict in this case.

6         Members of the jury:

7         You have heard all the evidence, and it is now time

8    for me to instruct you about the law that you must follow in

9    deciding this case.

09:15:33 10        I will start by explaining your duties and the general

11    rules that apply in every civil case.  Then, I will explain

12    the elements, or parts, of the claims that Plaintiff

13    Elizabeth Goodwin alleges against Raymond Frazier -- alleges

14    Defendant Frazier is liable for.

09:15:58 15        Then, I will instruct you on damages, which will only

16    apply if you find defendant liable for any of the claims.

17         After I give you these instructions, the lawyers will

18    present their closing arguments.

19         Following clothing arguments, I will explain the rules

09:16:19 20    that you must follow during your deliberations in the jury

21    room, and the interrogatories and verdicts that you may

22    return.

23         Please listen very carefully to everything that I say.

24         It is your duty as jurors to follow the law as stated

09:16:38 25    in the instructions of the Court, and to apply the rules of

law so given to the facts as you find them from the evidence
in this case.

You have two minute duties as jurors: The first one
is to decide what facts -- what the facts are from the
evidence that you saw and heard here in court. Deciding
what the facts are is your job, not mine, and nothing that I
have said or done during this trial was meant to influence
your decision about the facts in any way.

Your second duty is to take the law that I will give
you, apply it to the facts, and decide if the plaintiff has
proven defendant liable by a preponderance of the evidence.

It is my job to instruct you about the law, and you
are bound by the oath that you took at the beginning of
trial to follow the instructions that I give you, even if
you personally disagree with them.

This includes the instructions that I gave you before
and during trial and these instructions. All of the
instructions are important, and you should consider them
together, as a whole.

The lawyers will talk about the law during their
arguments. But if what they say is different from what I
say, you must follow what I say. What I say about the law
controls.

Perform these duties fairly. Do not let any bias,
sympathy, or prejudice that you may feel toward one side or

1    the other influence your decision in any way.

2         All persons are equal before the law.

3         In this case, Defendant Frazier is a retired sheriff's

4    deputy, and as such, was a law enforcement officer.

09:18:55  5         Plaintiff Elizabeth Goodwin and Decedent Brian Garber

6    are private citizens.

7         All parties are equal before the law.  Defendant and

8    plaintiff are entitled to the same fair consideration.

9         You should consider and decide this case as a dispute

09:19:15 10   between persons of equal standing in the community of equal

11   worth, and holding the same or similar situations in life.

12   All persons stand equal before the law and are to be treated

13   as equals.

14        In a civil action, like this one, the burden of proof

09:19:36 15   is by preponderance of the evidence.  To establish something

16   by a preponderance of the evidence, means to prove that

17   something is more likely true than not.

18        This standard does not require proof to an absolute

19   certainty, since proof to an absolute certainty is seldom

09:19:57 20   possible in any case.

21        You may have also heard the term "proof beyond a

22   reasonable doubt."  This is a stricter standard that applies

23   in criminal cases only.  It does not apply in a civil case,

24   like this one.  You should, therefore, put it out of your

09:20:18 25   minds.

1        In determining whether any fact in issue has been

2   proven by a preponderance of the evidence, you may, unless

3   otherwise instructed, consider the testimony of all

4   witnesses, regardless of who may have called them, and all

09:20:37 5   exhibits received in evidence, regardless of who may have

6   produced them.

7        During this trial, I have asked witnesses -- well, I

8   haven't asked witnesses any questions.

9        But in any event, do not assume that I hold any

09:20:55 10  opinions on this matter or on what the outcome of the case

11  should be.

12       You must make your decision based only on the evidence

13  that you saw and heard here in court.  Do not let rumors,

14  suspicions, or anything else that you may have seen or heard

09:21:13 15  outside of court, influence your decision in any way.

16       Evidence is all the testimony received from the

17  witnesses, including depositions and the exhibits admitted

18  during the trial, the stipulations that the lawyers have

19  agreed to, which I just read to you, and any facts which the

09:21:39 20  Court requires you to accept as true.

21       Nothing else is evidence.  The lawyers' statements and

22  arguments are not evidence.  If you remember the facts

23  differently from the way the attorneys have stated them, you

24  should base your decision on what you remember.

09:21:57 25       The lawyers' questions and objections are not

1    evidence.  My legal rulings are not evidence.  And my

2    comments and questions are not evidence.

3         Certain demonstrative exhibits have been shown to you.

4    Those exhibits are used for convenience and to help

09:22:19  5    you -- and to help explain the facts of the case.  They are

6    not themselves evidence or proof of any facts.

7         During the trial, I may have not let you hear the

8    answers to some of the questions that the lawyers asked, and

9    I may have ordered you to disregard things that you saw or

09:22:38  10    heard, or I struck things from the record.  You must

11    completely ignore all these things.  Don't even think about

12    them.

13         Do not speculate about what a witness may have said.

14    You may not draw any inferences from an unanswered question,

09:22:56  15    nor may you consider testimony which has been stricken in

16    reaching your decision.

17         The law does not require any party to call as

18    witnesses all persons who may have been present at any time

19    or place involved in the case, or who may appear to have

09:23:13  20    some knowledge of the matters at issue in this trial.  Nor

21    does the law require any party to produce as exhibits all

22    papers and things mentioned in the evidence in the case.

23         Make your decision based only on the evidence, as I

24    have defined it here, and nothing else.

09:23:35  25         You should use your common sense in weighing the

evidence.  Consider it in the light of your everyday
experience with people and events, and give it whatever
weight you believe it deserves.  If your experience tells
you that certain evidence reasonably leads to a conclusion,
you are free to reach that conclusion.

Now, some of you have heard the terms "direct
evidence" and "circumstantial evidence."

Direct evidence is simply the evidence like the
testimony of an eyewitness, which, if you believe, directly
proves a fact.  If a witness testified he saw it raining
outside, and you believe him, that would be direct evidence
that it was raining.

Circumstantial evidence is simply a chain of
circumstances that indirectly prove a fact.  If someone
walked into the courtroom wearing a raincoat covered with
drops of water and carrying a wet umbrella, that would be
circumstantial evidence from which you could conclude that
it was raining.

It is your job to decide how much weight to give the
direct and circumstantial evidence.  The law makes no
distinction between the weight that you should give to
either one or say that one is any better evidence than the
other.  You should consider all the evidence, both direct
and circumstantial, and give it whatever weight you believe
it deserves.

1          The law permits you to draw reasonable inferences from

2     the evidence that has been presented.  Inferences are

3     deductions or conclusions which reason and common sense lead

4     the jury to draw from facts which has been established by

09:25:35  5     the evidence in this case.

6          In other words, while you should consider only the

7     evidence in the case, you are not limited solely to what you

8     see and hear as the witnesses testify.  You are permitted to

9     draw from the facts which you find have been proved, such

09:25:55 10     reasonable inferences as you feel are justified in light of

11     your common experience.

12          You may consider the statements approved by a party or

13     witness who testified under oath before trial as evidence of

14     the true of what he or she said in the earlier statements,

09:26:15 15     as well as in deciding what weight to give his or her

16     testimony.

17          A witness may be discredited or impeached by

18     contradictory evidence, or by evidence that at some other

19     time, the witness has said or done something, or has failed

09:26:33 20     to say or do something that is inconsistent with the

21     witness's present testimony.

22          If you believe any witness has been impeached, and

23     thus discredited, you may give the testimony of that witness

24     such credibility, if any, you think it deserves.

09:26:52 25          If a witness is shown knowingly to have testified

1    falsely about any material matter, you have a right to

2    distrust such witness's other testimony, and you may reject

3    all of the testimony of that witness or give it such

4    credibility as you may think it deserves.

09:27:12  5         You are the sole judges of the credibility of the

6    witnesses and the weight their testimony deserves.  You may

7    be guided by the appearance and conduct of a witness or by

8    the manner in which the witness testifies or by the

9    character of the testimony given or by evidence contrary to

09:27:32 10   the testimony.

11         You should carefully examine all testimony given, the

12   circumstances under which each witness has testified, and

13   every matter in evidence tending to show whether a witness

14   is worthy of belief.  Consider each witness's intelligence,

09:27:56 15   motive, and state of mind, and demeanor, or manner, while

16   testifying.

17         Consider the witness's ability to observe the matter

18   as to which the witness has testified and whether the

19   witness impresses you as having an accurate recollection of

09:28:13 20   these matters.

21         Also, consider any relation each witness may have with

22   either side of the case, the manner in which each witness

23   may be affected by the verdict, and the extent to which the

24   testimony of each witness is either supported or

09:28:30 25   contradicted by other evidence in the case.

1    Inconsistencies or discrepancies in the testimony of a

2    witness, or between the testimony of different witnesses,

3    may or may not cause you to discredit such testimony.  Two

4    or more persons seeing an event may see or hear it

09:28:49  5    differently.

6    In considering a prior inconsistent statement or

7    conduct, you should consider whether it was simply an

8    innocent error or an intentional falsehood and whether it

9    concerns an important fact or an unimportant detail.

09:29:07 10    One more point about witnesses.

11    Sometimes jurors wonder if the number of witnesses who

12    testified makes any difference.  Don't make any decision

13    based only on the number of witnesses who testified.  What

14    is more important is how believable the witnesses were and

09:29:27 15    how much weight you think their testimony deserves.

16    Concentrate on that, not the number of witnesses.

17    Another part of your job as jurors is to decide how

18    credible or believable each witness was.  This is your job,

19    not mine.  It's up to you to decide if the witness's

09:29:50 20    testimony was believable and how much weight you think it

21    deserves.

22    You are free to believe everything that a witness said

23    or part of it or none of it at all, but you should act

24    reasonably and carefully in making these decisions.

09:30:05 25    Let me suggest some things that you -- for you to

1    consider in evaluating each witness's testimony.

2         First, ask yourself if the witness was able to clearly

3    see and hear the events.  Sometimes even an honest witness

4    may not have been able to see or hear what was happening, or

09:30:25  5    may make a mistake.

6         Second, ask yourself how good the witness's memory

7    seemed to be.  Did the witness seem to be able to accurately

8    remember what happened?

9         Third, ask yourself if there was anything else that

09:30:43 10    may have interfered with the witness's ability to perceive

11    or remember the events.

12         Fourth, ask yourself how the witness acted while

13    testifying.  Did the witness appear honest or did the

14    witness appear to be lying?

09:31:12 15         Fifth, ask yourself if the witness had any

16    relationship to the plaintiff or defendant or anything to

17    gain or lose from the case that might influence the

18    witness's testimony.  Ask yourself if the witness had any

19    bias, prejudices, or reason for testifying that might cause

09:31:31 20    the witness to lie or to slant the testimony in favor of one

21    side or the other.

22         Sixth, ask yourself if the witness testified

23    inconsistently while on the witness stand, if the witness

24    said or did something, or failed to say or do something at

09:31:49 25    any other time that is inconsistent with what the witness

1    said while testifying.

2         If you believe that the witness was inconsistent, ask

3    yourself if this makes the witness's testimony less

4    believable.  Sometimes it may; other times, it may not.

09:32:10  5    Consider whether the inconsistency was about something

6    important or about some unimportant detail.  Ask yourself if

7    it seemed like an innocent mistake or if it seemed

8    deliberate.

9         Seventh, and ask yourself how believable the witness's

09:32:30  10   testimony was in light of all the other evidence.  Was the

11   witness's testimony supported or contradicted by other

12   evidence that you found believable?

13        If you believe that a witness's testimony was

14   contradicted by other evidence, remember that people

09:32:43  15   sometimes forget these things; even two honest people who

16   witness the same event may not describe it in exactly the

17   same way.

18        These are only some of the things that you can

19   consider in deciding how believable each witness was.

09:33:00  20        You may also consider other things that you think shed

21   some light on the witness's believability.  Use your common

22   sense and your everyday experience in dealing with other

23   people.  And then decide what testimony you believe and how

24   much weight you think it deserves.

09:33:19  25        There is one more general subject that I want to talk

1    to you about before I begin explaining the elements of the

2    claims alleged in this case.

3        The lawyers for both sides objected to some things

4    that were said or done during the trial.  Do not hold this

09:33:36 5    against either side.

6        The lawyers have a duty to object whenever they think

7    that something is not permitted by the Rules of Evidence.

8    Those rules are designed to make sure that both sides

9    receive a fair trial.

09:33:49 10       And do not interpret my rulings on their objections as

11   any indication of how I think the case should be decided.

12   My rulings were based on the Rules of Evidence, not on how I

13   feel about the case.

14       Remember that your decision must be based only on the

09:34:07 15   evidence that you saw and heard here in court.

16       The law to be applied to the plaintiff's excessive

17   force claim is the federal civil rights law which provides

18   that a remedy for individuals who have been deprived of

19   their constitutional rights under color of state law.  It is

09:34:31 20   called "Section 1983 of Title 42 of the United States Code,"

21   or simply "Section 1983" for short.

22       Section 1983 states that every person who, under color

23   of any of statute, ordinance, regulation, custom, or usage

24   of any state or territory, or the District of Columbia,

09:34:58 25   subjects or causes to be subjected any citizen of the

1   United States, or other person within the jurisdiction

2   thereof, to the deprivation of any of rights, privileges, or

3   immunities secured by the constitution and the laws, shall

4   be liable to the party injured in any action at law, sued in

09:35:20   5   equity, or other proper proceedings for redress.

6        To establish a claim against Defendant Frazier under

7   Section 1983, plaintiff must establish by a preponderance of

8   the evidence each of the following three elements:

9        First, that the conduct complained of was by a person

09:35:40   10   acting under color of state law;

11        Second, that this conduct deprived Brian Garber of

12   rights, privileges, or immunities secured by the

13   constitution or laws of the United States; and

14        Third, that the defendant's acts were the proximate

09:36:01   15   cause of Brian Garber's injuries and the consequent damages

16   sustained by plaintiff.

17        In this case, the parties have agreed that

18   Defendant Frazier acted, at all times, under the color of

19   state law, and that he fired gunshots that proximately

09:36:19   20   caused the death of Brian Garber.  In other words, the first

21   and third elements of plaintiff's 1983 claim have been

22   established.

23        The second element of plaintiff's claim is that

24   Brian Garber was deprived of a federal right by

09:36:34   25   Defendant Frazier.

1    Under the Fourth Amendment of the United States

2  Constitution, every person has the right not to be subjected

3  to unreasonable or excessive force while being detained by a

4  law enforcement officer, even if such detention is otherwise

09:36:51 5  made in accordance with due process of law.

6    Under the Fourth Amendment, a police officer may use

7  only such force as is objectively reasonable under all the

8  circumstances.  The use of deadly force is only

9  constitutionally reasonable if Defendant Frazier had

09:37:12 10  probable cause to believe that Brian Garber posed an

11  immediate threat of death or other serious physical harm to

12  him.

13    Proximate cause means a reasonable belief supported by

14  particular facts of the circumstances.

09:37:29 15    You must judge the reasonableness of a particular use

16  of force from the perspective of an objectively reasonable

17  officer on the scene and not with the 20/20 vision of

18  hindsight.

19    Facts known to the officer are relevant to your

09:37:49 20  inquiry.  However, an officer's subjective intent or motive

21  is not relevant to your inquiry.

22    Plaintiff need not show that any defendant intended to

23  deprive Brian Garber of his rights.

24    In determining whether Defendant Frazier used

09:38:08 25  excessive force in this case, consider all of the

1    circumstances known to him, including but not limited to:

2         The nature of the crime or other circumstances known

3    to him at the time force was applied;

4         Whether Brian Garber posed an immediate threat of

09:38:30  5    death or serious physical harm to him;

6         Whether Brian Garber was actively resisting arrest

7    and/or seizure, or attempting to evade arrest or seizure by

8    flight;

9         The amount of time Defendant Frazier had to determine

09:38:47 10    the type and amount of force that reasonably appeared

11    necessary, and any changing circumstances during that

12    period;

13         The type and amount of force used;

14         The availability of alternative methods;

09:39:03 15         Whether it was practical for Defendant Frazier to give

16    warning of the immediate use of force and whether such

17    warning was given; and

18         Whether Defendant Frazier violated generally accepted

19    police standards and procedures.

09:39:22 20         I will now instruct you as to the proper measure of

21    damages in this case.

22         Just because I'm instructing you on how to award

23    damages does not mean that I have any opinion on whether or

24    not the defendants should be held liable.

09:39:38 25         Instructions as to the measure of damages is given for

1       your guidance, and should only be considered if, and only

2       if, you find Plaintiff Elizabeth Goodwin, the administrator

3       of the estate of Brian Garber, has proven her claims against

4       Defendant Frazier in this case.  If you find this, then you

09:39:58 5    must decide what damages, if any, plaintiff is entitled to

6       recover.

7           You shall award actual damages only for the injuries

8       which you find that plaintiff has proven by a preponderance

9       of the evidence.

09:40:13 10     In determining the amount of damages, you will

11      consider economic losses and noneconomic losses, if any,

12      proximately and directly caused by Brian Garber's actual

13      injury, but you may not include any amount solely meant to

14      punish a defendant.

09:40:34 15     You may award damages for any pain, suffering, or

16      mental anguish that Brian Garber and his beneficiaries

17      experienced as a consequence of the defendant's unlawful

18      conduct.  No evidence of monetary value of such intangible

19      things as pain and suffering, mental anguish, and loss of

09:40:58 20   society need to be introduced into evidence.

21          There is no exact standard for fixing the compensation

22      to be awarded for these elements of damages.  Any award you

23      make should be fair in light of the evidence presented at

24      trial.

09:41:12 25     In determining the amount of any damages that you

1    decide to award, you should be guided by dispassionate

2    common sense.  You must use sound discretion in fixing an

3    award of damages, drawing reasonable inferences from the

4    facts in evidence.  You may not award damages based on

09:41:31  5    sympathy, speculation, or guesswork.

6         Under Ohio's general survival of actions statute, a

7    decedent's right of action for personal injuries survives

8    and passes to his personal representative and may be

9    instituted for the benefit of the decedent's estate.

09:41:58  10        In this case, if you find for the plaintiff, you will

11    decide what sum of money will compensate Brian Garber for

12    his economic losses and noneconomic losses that he suffered

13    from the shooting.  In making this determination, you may

14    consider:

09:42:13  15        The conscious pain and suffering that Brian Garber may

16    have experienced during the events at issue;

17        The emotional and mental harm that Brian Garber may

18    have experienced during the events the issue;

19        Any other expenditures incurred as a result of

09:42:35  20    Brian Garber's death.

21        If you find for the plaintiff, you will also decide

22    what sum of money will compensate the next of kin for the

23    injury and loss to them resulting from the wrongful death of

24    Brian Garber.

09:42:48  25        When deciding damages suffered by reason of the

1    wrongful death, you may consider the following:

2         The loss of support from the reasonably expected

3    earning capacity of Brian Garber;

4         The loss of services of Brian Garber;

5         The loss of society of Brian Garber, including loss of

6    companionship, consortium, care, assistance, attention,

7    protection, advice, guidance, counsel, instruction,

8    training, and education suffered by the next of kin;

9         The loss of prospective inheritance to Brian Garber's

10   heirs at law at the time of his death; and

11        The mental anguish incurred by the surviving next of

12   kin.

13        You may also award -- you may also make an award for

14   the reasonable funeral and burial expenses, if the plaintiff

15   has established these expenses by a preponderance of the

16   evidence.

17        The burden is on the plaintiff to establish by a

18   preponderance of the evidence that unlawful actions by

19   Defendant Frazier were a proximate cause of any damages

20   sustained in this case.

21        By "proximate cause," I mean that Defendant Frazier's

22   actions were the proximate cause of the damages sustained.

23        Proximate cause means that there must be a sufficient

24   causal connection between the acts and omissions by

25   Defendant Frazier and any damages sustained by the

1    plaintiff.

2         An act or omission is a proximate cause if it

3    will -- if it was a substantial factor in bringing about or

4    actually causing damage.  That is, if the damage was a

09:44:51  5    reasonably foreseeable consequence of Defendant Frazier's

6    act or omission.

7         If the damage was a direct result of a reasonably

8    probable consequence of Defendant Frazier's act or omission,

9    it was proximately caused by such act or omission.

09:45:09 10         Proximate cause need not always be the nearest cause,

11    either in time or space.  In addition, there may be more

12    than one proximate cause of damage.

13         Now, this concludes the part of my instructions

14    explaining the rules for considering particular testimony

09:45:32 15    and evidence.

16         And we'll now have the arguments of counsel.

17         After the arguments conclude, I'll finish up by

18    explaining some things about your deliberation in the jury

19    room.

09:45:45 20         Now, I want to assure you that I've gone over quite a

21    bit of territory here in these instructions so far, and

22    there will be more.

23         However, there will be a copy of these instructions

24    given to you to take into the jury room so that if there is

09:46:02 25    anything that you want to read again for yourselves, you'll

1    have an opportunity to do that.

2         Counsel for the plaintiff, have I accurately read the

3    instructions so far --

4              MR. GILBERT:  Yes, you have, Your Honor.

09:46:20  5              THE COURT:  -- to the jury?

6         And counsel for the defendant, have I accurately read

7    the instructions to the jury that I've given so far?

8              MR. DOWNEY:  Yes, Your Honor.

9              THE COURT:  All right.  Very well.

09:46:32 10         We will now hear closing argument by counsel for the

11   plaintiff, Miss Goodwin.

12              MR. GILBERT:  Thank you.

13         Good morning, members of the jury.

14         I want to thank you for your time and attention in

09:47:00 15   this case.  I appreciate the service that you're doing, on

16   behalf of my colleagues as well.

17         Judge Baughman, thank you for running a very good

18   trial.  I appreciate your considerations throughout this

19   week and making sure everything ran smoothly.  We really

09:47:18 20   appreciate that.

21         Folks, this is our time, right now, to tell you what

22   we think the case is about and summarize some of the

23   evidence and arguments that we feel are important in this

24   case.

09:47:31 25         Obviously, many of you have taken notes.  You have

1       some recollection of what occurred.  You were very attentive

2       during the trial.  So you can rely on those as well.

3               Buy really, what this case is about was Brian Garber,

4       who was a young man, age 28.  Father of two young children.

09:47:56  5   Had a family who loved him, who had a long life ahead of

6       him.  But he struggled with mental illness, and that night,

7       he needed help.

8               But instead, he wound up dead.  And he is dead because

9       the defendant here, Jeffrey Frazier, shot him when he didn't

09:48:20 10   need to do so, and when he fired his gun, and used excessive

11      force.

12              This is a case about common sense.  These officers who

13      were there that night are trained to know what a gunshot is.

14      They go to the range every year.  They wear headphones to

09:48:42 15   reduce the sound.  They definitely know what a gunshot

16      sounds like, and they all describe the moment that they

17      heard what they thought to be a gunshot as a gunshot.

18              And the suggestion that this could have been, as

19      Mr. Downey said in his open remarks, a beer can, or anything

09:49:08 20   but a gun is just simply irrational and defies logic.

21              We have proven that Frazier was the source of the

22      bang.  It could be no one else.  He was in the room.  And it

23      could be nothing else.

24              We have proven by a preponderance of the evidence, as

09:49:31 25   the Judge has instructed, that this shooting was

1    unnecessary, and would not have happened if Frazier had not

2    acted objectively unreasonable.

3              Defendant Frazier is the only defendant in

4    this case. Deputy Knee and Lieutenant Nicholson are not

09:50:04 5    defendants. This case is only about Frazier. And unlike

6    Frazier, Nicholson and Knee did act in accordance with

7    certain reasonable standards. They took cover. They used

8    precaution and tried to escalate the situation.

9         Now, why? We have some questions about what happened

09:50:24 10    afterwards, and how they got their story straight, but it

11    seems clear that they acted in response to the unjustified

12    actions of Mr. Frazier.

13         Without Frazier's actions, they would not have shot

14    Brian Garber, and that is because Frazier's conduct went

09:50:46 15    beyond the norm of how a reasonable officer should act.

16              And finally, this case is about finding the truth in a

17    web of lies. You cannot find that the shooting is

18    reasonable if the justification is based on lies and

19    misrepresentations.

09:51:06 20         So what do we know for sure about this trial? And

21    what came out of this trial?

22              First, we know that the officers arrived at the house

23    and went upstairs to the bedroom. We know that when they

24    got there, Nicholson and Knee took positions of cover at the

09:51:28 25    doorway.

1        Frazier was some distance behind.  And to the surprise

2    of his fellow officers at the time, he walked into the room.

3    Nicholson, the sergeant in charge, did not want him there,

4    and Frazier himself even admitted, It wasn't the best idea

09:51:54  5    in the world.

6        It certainly was not.

7        Next, they attempted to communicate with Brian.

8    Nicholson wanted to deescalate the situation.  And while he

9    did it, he even had his gun -- lowered the barrel of his gun

09:52:11 10   so he could communicate with Brian.  All three officers had

11   their eyes fixed directly on Brian during this entire

12   exchange and communication, and the room was well lit.

13       This conversation lasted, as stipulated in our

14   statement of facts, for 45 seconds to a minute.  This is a

09:52:34 15   long time for police to assess a situation and react.

16       During that entire time, even though they said there

17   was a protrusion under Brian's shirt, all three officers

18   have clearly stated that they did not need to shoot during

19   that period of time.  Only one person in the bedroom had a

09:52:59 20   gun, and that was Defendant Frazier.

21       Brian Garber never had a gun.  He was unarmed.  But

22   they want you to believe that they were certain that when

23   that loud bang occurred, it was a gun coming from

24   Brian Garber.

09:53:23 25       All three officers have been adamant that they heard a

584

1    bang, and the bang sounded like a gunshot.  All three

2    officers are clear that this bang definitely came from

3    inside the room.

4         After this shooting, BCI Agent Cory Momchilov, who you

09:53:42 5  heard in this trial, testified that no other source could be

6    identified for a sound that loud, or any sound that would

7    seem like a gunshot.

8         Until this day, none of them could come up with a

9    theory, even speculation, of how a gunshot could have been

09:54:06 10 in that room, and the only reasonable explanation is that it

11   came from Defendant Frazier.

12        Nicholson and Knee clearly testified that the reason

13   they shot Brian Garber was because of that bang, not because

14   of any movements by Brian.  And we know that none of the

09:54:29 15 officers saw a muzzle flash from Brian's direction.

16        As a result of all this, Brian was shot 14 times.  14

17   times.  We know that Frazier fired first.  And remember --

18   and this is very important -- that Knee is clear that

19   Frazier fired first.

09:54:53 20        Frazier shot more than anybody that was there.  He

21   testified he fired 8 to 10 shots.

22        Nicholson fired twice.

23        And Knee testified that he fired three times.

24        We brought the medical examiner in, Dr. Lisa Kohler,

09:55:13 25 who said that there were 14 entrance wounds.  And you will

1    note that three entered into the back of Brian's body.  A

2    number of these shots hit vital organs.

3         And when it was all done, all the officers were

4    certain that they never saw a remote on the bed.  But

09:55:35  5    that -- but somehow, that remote appeared in photos taken

6    shortly after the shooting.  Those photos were taken by

7    Lieutenant Zehner, who was in the room alone for some period

8    of time.

9         There's no question that the remote was in plain site,

09:55:55  10   yet no one admits they saw it.  These are trained officers

11   to observe and know what they're doing.

12        And the remote was tested, and Agent Momchilov

13   testified that the remote could not be linked to

14   Brian Garber through either fingerprints or DNA comparisons.

09:56:21  15        After the shooting, then all three officers talked

16   about the shooting in the kitchen.  And as Deputy Knee

17   acknowledged, he understands how it could look to have

18   officers discussing a shooting event.

19        And you can consider that when they came up with this,

09:56:39  20   the same page about what was under the shirt looked like a

21   Glock, was designed to justify what they claim was an

22   imminent danger.

23        Officers are supposed to be separated.  They're

24   supposed to be given the opportunity to give statements

09:57:00  25   without any type of influence by anybody else.  That didn't

1    happen here.

2          I'd also like to point out what is not relevant in

3    this case.

4          You heard the officer -- you heard Deputy Frazier talk

09:57:15 5    about all of his commendations.  Well, regardless of whether

6    or not an officer has received awards, has ever done good or

7    kind things in his life, doesn't mean that he didn't violate

8    the law or distort the truth on another occasion.

9          We should be focused on what happened in the room.

09:57:36 10          And we also think that what is not relevant in this

11    case is any attempt to disparage either Brian or his family,

12    because that has nothing to do with whether the officers

13    acted reasonably; and particularly, Defendant Frazier,

14    whether he acted objectively reasonable when he fired his

09:58:01 15    shots at Brian Garber.

16          Marital struggles, prior suicide attempts in

17    association with Brian's mental illness, and the loss of

18    their daughter to sudden infant death syndrome, none of this

19    is relevant to whether it was reasonable for Frazier to pull

09:58:21 20    the trigger and kill Brian Garber.

21          So much has been focused on the domestic violence

22    incident on March 16, 2014.  This clearly was a

23    manifestation of Brian's mental illness, and it was

24    unfortunate.  It was ugly.  But this is really just

09:58:47 25    background about why Brian needed help.

1          Yes, it led to the information that there was a

2     possible gun that he had, but it doesn't change what

3     happened in the room:  How Frazier approached the situation.

4     How he went into the room.  How he put himself in a position

09:59:11  5     of danger.  All that is what is in relevant in this case.

6          And the question is whether Defendant Frazier's use of

7     deadly force was objectively reasonable under all the

8     circumstances.

9          His decision to shoot Brian Garber is constitutionally

09:59:30 10     reasonable only if he had probable cause to believe that

11     Brian posed an immediate threat of death or serious physical

12     harm.

13          But really, what is important here is how you would

14     determine the truth in this trial.

09:59:42 15          What did Frazier tell you about what he did and what

16     he saw?

17          You heard at this trial -- and we spent a lot of time

18     going over the inconsistent statements.  In the trial, he

19     said Brian lifted his shirt with his left hand.  That he saw

09:59:56 20     a black object in Brian's hand.  He said Brian's whole hand

21     did not come out from under the shirt, and then he heard a

22     pop, and then he fired.

23          Then we bring in a November 2014 previous statement,

24     where he said he saw Brian move forward in a hurried manner

10:00:17 25     before all this started.  In one version, he said Brian

1     started to extend his right hand out.  In another version,

2     he said Brian brought his entire hand out.

3          Frazier said in statements that he only fired his

4     weapon after he saw Brian start to lift his shirt and

5     presented what appeared to be a weapon.

6          He said that when he started firing, Brian was not

7     dying.  He was not dying, so he kept firing, as if that is

8     the standard for why you shoot, to make sure somebody's

9     dead.

10          That was in November 2014.

11          In December of 2015, during a deposition, here's what

12     Frazier said:

13          "Before the pop, did you see his arm or hand come out

14     of the area of the shirt?

15          "I did not.

16          "Did if you ever see his hand come out of his shirt?

17          "No.

18          "Did you ever see him point a gun at you?

19          "Just what I perceived to be underneath the shirt.

20          "Did you ever see him extend his arm?

21          "No, sir.

22          "Did you ever see him lift his shirt and present a

23     firearm to you?

24          "No, sir.

25          "Did you ever see Brian brandish what you thought

1    looked like a gun?

2         "No, sir.

3         "So you never saw him with an object in his hand?

4         "Visibly, I did not see him with a gun, no.

5         "Or an object?

6         "I did not see any objects in his hand.  Whatever he

7    had was under his shirt."

8         This is diametrically contradictory to what he said in

9    the trial.  It's contradictory to what he said in November

10   of 2014, when he prepared a written statement with his

11   lawyer, and had time to think about what happened, and

12   present it to authorities.

13        We don't really know why he shot Brian, but we know

14   that it happened, and we know that he's lying about it.

15        Police have a duty to be clear and accurate, not all

16   over the map and waffling back and forth.

17        And we know that Frazier has been described by his

18   superior, Captain Bosko, as a hothead, and sometimes viewed

19   as unbelievable, and is thought to exaggerate, manipulate,

20   and has been caught in false statements.

21        We know that Dr. Aaron Becker, who examined Frazier

22   for fitness of duty, said that "He has little patience and

23   low frustration and tolerance.  He admits that he learned to

24   back off in certain situations and call for another officer

25   to deal with it."

1    All this relates to credibility.

2    You heard the Judge give you instructions on

3    credibility.  When you look at Defendant Frazier, it's

4    obvious he's not a credible witness.  And even his own

10:03:15  5    partners contradict him in what he said happened in that

6    room.

7    So we know that three bullets entered his back of his

8    body, one of them through the left arm, at the elbow,

9    exiting -- think about how that could have happened.  One

10:03:32 10    through the back of the right thigh, which is lodged near

11    his right femur, which fractured from the shot.

12    And at the end of the shooting, his hands were over to

13    his right.  No one can explain how those hands got up.  And

14    they all said that the hands were by -- under the shirt.

10:03:53 15    We leave you to figure that out.

16    So when you take all this information together, there

17    is only one conclusion to draw, and that is that

18    Defendant Frazier violated Brian's constitutional rights.

19    And we ask you to hold him accountable.

10:04:15 20    Brian Garber is dead, and now we have two kids without

21    a father and an entire family who grieves their loss.  And

22    though it feels like an impossible question to answer, it's

23    your job to decide what that loss is worth.

24    And, yes, Brian Garber had struggled with mental

10:04:40 25    health issues, and sometimes he struggled to keep it

1       together.  But there's no doubt he supported his family by

2       obtaining a higher education and working and by doing

3       everything he could to take care of his family.

4            He did this in spite of his issues.

10:05:00   5            Most important, Brian Garber loved his children, and

6       his children loved him.  But now, they'll never get to have

7       all of those experiences we all love having with our own

8       parents and relish having with our own kids.

9            He'll never be able to attend father/daughter dances

10:05:28  10       with his daughter.  He'll never be able to reach -- or to

11       teach Holly how to drive.  He'll never be able to teach Nick

12       to throw a baseball.  He'll never be able to cheer for his

13       kids at sporting events.  He won't be able to walk his

14       daughter down the aisle.

10:05:47  15            And Nick, who has special needs, who will need his

16       father to help him, will not have that guidance and provide

17       him for years to come.

18            They will never have all of these moments in their

19       lives.

10:06:05  20            And so what is the value of this tremendous loss,

21       ladies and gentlemen?

22            Really, no amount of money can replace that.  We can

23       only ask for money, but we would suggest that it should be

24       substantial.  We would suggest, but it's up to you, that the

10:06:26  25       loss of these children not having a father is worth at least

1    a million dollars to each child.

2         As far as his earning capacity, he did have a track

3    record of working.  He could have lived to another 50 years

4    or so.  He probably could have worked until he was 65.  And

5    even if he was working part time and making minimum wage, he

6    at least would make a half a million dollars over the next

7    40 years.  And this is the bare minimum.

8         But remember, he was just starting out in his career

9    path related to his degree when this happened.  He had just

10   graduated from DeVry University, and he was working in the

11   profession he went to school for.  And he wasn't able to

12   continue on that path because his life was taken away.  He

13   had a 4.0 GPA and graduated with honors.

14        So what would his earning capacity have been?  Is it

15   500,000?  Is it 700,000?  Is it a million?

16        And don't forget that he also was providing childcare

17   to his kids.  And what is that worth?

18        And when you take all these matters together:  The

19   loss of life, the conscious pain and suffering as Frazier

20   continued to shoot him because he would not die, and the

21   pain and suffering, we don't think it is unreasonable,

22   members of the jury, to come up with a damage figure between

23   3 to $6 million, or more.

24        But this is your decision.  A life was taken.  People

25   suffered.  His children will suffer for the rest of their

Closing Argument - Downey

1    life.

2         So this was not just a horrible tragedy.  It was a

3    horrible tragedy that never should have happened.

4         So we urge you to come back with a verdict for the

10:08:35 5    plaintiff and award compensation that is fair and just.

6         Thank you.

7              THE COURT:  Mr. Downey?

8              MR. DOWNEY:  Thank you, Your Honor.

9         May it please the Court.

10:09:05 10    Thank you, Your Honor, counsel.

11        Ladies and gentlemen of the jury, thank you so much

12    for your service.  It is appreciated.

13        When I spoke to you a few days ago, I talked to you

14    about choices.  You know, you've heard the evidence, and you

10:09:23 15    now know the standard:  It's a preponderance of the

16    evidence.

17        That means that you have to decide whether it was more

18    likely than not that Deputy Frazier violated the

19    constitution when he shot Brian Garber.

10:09:34 20        I submit to you that the evidence has shown that he

21    did not violate the constitution; that he acted reasonably

22    and appropriately in his interactions with Mr. Garber.

23        But, again, it starts with choices.  And, you know, as

24    Mr. Gilbert noted during his portion of the opening,

10:09:52 25    Brian Garber was a troubled young man.  There's no question

Closing Argument - Downey

594

1    about that.  He had a troubled marriage.  He had suicide

2    attempts in his record.  He had elicit drug use in his

3    record.  It is a sad tragedy, the way that he ended his life

4    and the way he choose to live it at the end.

10:10:09  5    We also know, though, that choices were made by Brian

6    that day.  And it really does start with breaking in the

7    door in the back of the house he shared with Sara Knowlton.

8    And when you read the instructions that Judge Baughman

9    gives you, you're going to see that the criminal act that

10:10:26  10   Mr. Garber committed that day is something that is factored

11   into what the deputies are thinking as they stand across

12   from his bedroom.

13   It's a violent act.  He breaks through the door.  His

14   mom is with him when he does that.  He goes into the house.

10:10:40  15   He kits his mother.  Okay.  He hits his mother.  He

16   strangles his wife.  His children are there.  Okay?

17   This is violence.  This is criminal.  That's what he

18   did.

19   And Connie and Sara did what people do when confronted

10:10:56  20   with something like this, they called the police.  Okay.

21   And the police came.

22   Deputy Knee came.  Lieutenant Zehner came.  They came

23   and interacted with Connie and Sara.  They took their

24   statements.  They took evidence.  They took a photo.  You

10:11:11  25   saw it.

1        You know, did the family downplay some of the violence

2   and some of the things that Brian did?  Yes.

3        There was a mark.  You saw it.  He hit her.  And you

4   heard her.  He was going nuts over here.  He's breaking

10:11:26  5   things.

6        Then he fled.  When Deputy Knee got there and

7   Lieutenant Zehner got there, and they took an evaluation of

8   the situation, they called for backup.

9        Now, you folks know there are five officers on a shift

10:11:36  10   in Richland County.  They cover 500 miles of territory.  All

11   five of them were at that house.  All five of them were

12   interacting and attempting to locate Brian Garber and take

13   statements from Connie and Sara.

14        Why were they doing that?

10:11:51  15        Because that was a serious, violent act, and that's

16   how they deal with domestic violence in Richland County.

17        So while those statements are being taken,

18   Deputy Frazier, with 17 years of law enforcement experience,

19   and a number of commendations that you do get to consider in

10:12:06  20   your deliberations, he went and looked for Brian Garber.

21   Tried to locate him.  He didn't.

22        We know it's stipulated in the record that a call came

23   out an hour later, but some things happened between then and

24   when the officers left.

10:12:19  25        Connie took the two children and went across the

Closing Argument - Downey

596

1    street to the house she shared with Matt where Brian grew

2    up.  And she interacted with Brian in the room, the bedroom,

3    the very bedroom where this shooting occurred.

4         And what do we know from that room?  What's undisputed

10:12:32  5    now in the evidence of this case?

6         It's undisputed that Brian Garber was seated on his

7    bed, wearing a T-shirt with an object under his shirt that

8    he presented as a firearm, a gun.

9         Now, you heard his dad's statements to Cory Momchilov

10:12:47  10    that night.  It had the outline of a gun.  It wasn't a hand.

11    It wasn't a finger.

12         We know those officers perceived a gun, we know

13    Matt Garber perceived a gun, and we know Brian Garber wanted

14    them to believe it was a gun.  We know those things.  Those

10:13:01  15    are undisputed facts in the record of this case.

16         So what did Matt and Connie do with that information?

17    What did they do?

18         Matt said, Go down there and talk to the police.

19         Connie heads over to Sara's house.  While she's in

10:13:13  20    transit, Brian Garber is threatening to kill his wife.

21    Officers knew that, too.  Threatening to kill his wife.

22         I get out of the jail someday, what I'm going to do,

23    I'm going to kill you.

24         That's what what's going on.  What's really sad is,

10:13:27  25    this is a domestic call.  These officers do those calls two

1    to three times per week.  Serve and protect.  They made a

2    choice, too.  They serve and protect the community.  That's

3    what they do.  That's what they do for a living.  Okay?

4        And when they get the call that Brian Garber had a

10:13:43  5    gun, and he's been located, every doggone one of them was

6    back there.  And they called other jurisdictions in to

7    assist:  Lexington, Bellevue.  Seven officers on the scene

8    within minutes.

9        So when they enter Matt Garber's home, what do we

10:13:54  10    know?  What do the officers know?

11        They know it's a domestic incident, they know there

12    was violence, they know he may have a gun.  You also heard

13    that's typical with the domestic incidents that these

14    officers face on a daily basis.

10:14:12  15        There are guns in the home, and there are violence.

16    So they know that.  They don't do a tactical plan because

17    you don't do tactical plans when you go out to a domestic

18    incident.

19        You heard sergeant -- then Sergeant Nicholson, now

10:14:24  20    Lieutenant Nicholson, talk about what happens in these

21    domestic incidents when he goes and interacts with subjects.

22        They comply.  They listen.  They take his instruction.

23    They do what typical people do when they're pulled over by a

24    police officer or asked for their license.  They comply.

10:14:38  25        That's what you do.  You have your common sense.  You

Closing Argument - Downey

 1    get to bring it into the jury room.  You get to bring your

 2    experiences into the jury room.

 3         That's typical.  That's what people do when they

 4    interact with law enforcement.

10:14:50 5         So when they enter the house, this is still a typical

 6    situation.  They go in the house.  They go up the stairs.

 7    They go to the end of the hallway.

 8         Where does it stop being typical?

 9         Sergeant Nicholson's on the right.  Deputies on the

10:15:02 10   left.  Deputy Frazier goes in the house.  He doesn't have

 11   his gun drawn.  He goes into the room.

 12        Brian Garber, first words, I have a gun.  First words.

 13        He presents what looks like a gun.  We know that.

 14   It's undisputed that these officers believed he had a gun.

10:15:18 15        I would submit to you from that moment on -- so when

 16   the shooting occurred -- these officers were justified on

 17   the constitution and the instructions that you got to fire

 18   on Brian Garber.

 19        But they didn't do that.  Deputy Frazier is trained.

10:15:32 20   Sergeant Nicholson is trained.  He's a CIT.  You heard what

 21   that is.  Deputy Frazier attempts to talk to Brian Garber.

 22   Show me your hands.  Drop the gun.

 23        He doesn't comply.  He doesn't do what he's asked by

 24   these law enforcement officers.  These are proper commands.

10:15:45 25        And by the way, you've heard nothing to suggest that

1    anything that these officers did violates policy or police

2    practices.  Nothing.  Fine law enforcement officers.

3         So what do they do when confronted with a gun?

4         Now, you all heard 45 seconds to a minute in opening

10:16:00   5    statement.  Okay?  Imagine somebody standing across from you

6    with a gun pointed at you for 45 seconds to a minute.  Right

7    at you.

8         Do you need to hear a threat from them verbally to

9    know that you're being threatened?  To know that your life

10:16:15   10   is in danger?

11        These officers knew that.  They knew that the entire

12   time.  But they stood there and they attempted to talk him

13   down.  Deputy Frazier spoke.  And then he stopped.  He

14   deferred.  His supervisor was present with him just outside

10:16:30   15   the room.

16        And Sergeant Nicholson began to work with

17   Brian Garber.  Doesn't have to end like this.  We all have

18   families.  Show us your hands.

19        He talked to him for 45 seconds to a minute with a gun

10:16:46   20   trained on each of these officers, thinking that they could

21   be shot at any second, and they did not act.

22        I submit to you that that is a great law enforcement

23   officer, and that the officer that you hear described in

24   these 45 seconds to a minute is the same one that had all

10:17:02   25   those commendations.

1          What did they hear?

2          They heard a pop.  They heard a bang.  They reacted.

3     Split second.  One to two seconds, shooting is over.  One to

4     two seconds.

10:17:13  5          It's a tragedy.  It's a tragedy what happened to

6     Brian Garber.  He lost his life.  It's also a tragedy for

7     his family.

8          Well, these officers, Deputy Frazier, he's living with

9     that every day for the rest of his life as well.

10:17:30 10          You also heard that these officers, between the three

11    of them, have discharged their firearms four times in the

12    line of duty in 50 years of service.  That's not a hot head.

13          They take the use of deadly force very seriously, and

14    they know that you will as well.  Deputy Frazier knows that

10:17:49 15    you will.

16          The evidence that you heard in this case is of a law

17    enforcement officer who acted properly, who was objectively

18    reasonable.  And when you sit there in the room and you

19    deliberate, understand that this officer believed that that

10:18:00 20    man had a gun.

21          It doesn't matter one bit whether or not there was a

22    remote control on the bed, or whether or not in the

23    aftermath of a shooting where a man died, they observed

24    everything in a room as they're trying to figure out what

10:18:17 25    just happened.

1          It doesn't matter.  It matters what they perceived at

2     the time.  It's not 20/20 hindsight.  We know now

3     Brian Garber didn't have a gun.  We know that now, but these

4     officers did not know that then.

10:18:28  5          And Deputy Frazier, he answered Mr. Gilbert's

6     questions.  He's answered questions about this four or five

7     times.  He'll live with it the rest of his life.  He thinks

8     about it daily.

9          He didn't violate the constitution.

10:18:41 10          And we submit to you that when you review the

11    evidence, you deliberate, we ask you to find in his favor.

12         Thank you very much.

13              THE COURT:  Rebuttal?

14              MR. GILBERT:  Rebuttal.

10:19:03 15              THE REPORTER:  One second, Mr. Gilbert.  You

16    have to have put the microphone on.

17              MR. GILBERT:  Oh, okay.

18         Thank you very much.

19         Ladies and gentlemen, there are standards of policing

10:19:20 20    involved in this case.

21         There are objectively reasonable ways this matter

22    could have been handled better.

23         Mr. Downey doesn't see fit to talk about the

24    45 seconds to a minute when no one felt the need to use

10:19:41 25    deadly force.

1          Now, he's saying, Well, they could have.  But that's

2     not the standard.  The standard is, what caused the moment

3     that they fired the shots?

4          And they all said it was a bang coming from inside the

5     room.  The bang was definitely the sound of the gunshot.

6     And all the officers were clear, they did not need to shoot

7     until they heard that bang.

8          He keeps saying there was a gun in that room.  There

9     was no gun in that room.  The only guns that were there were

10    the officers' gun.

11         They were clear that they didn't need to shoot until

12    they -- they were clear they didn't have justification to

13    shoot for 45, 50 seconds.

14         The only man in that room with a gun was Frazier.

15    Brian didn't have a gun.  Frazier is the source of the bang.

16    It could be no one and nothing else.  There was no reason

17    for Frazier to shoot during that conversation.  He fired the

18    shot that caused the others to fire, too.

19         Now, you got to look at all the surrounding

20    circumstances.  That's very important.  You got to look at

21    why somebody put that remote on that bed.  Even Deputy Knee

22    said there couldn't have been a remote.

23         Why would they need to do that?  Why would somebody

24    like Zehner, who took the picture of it, say he never saw

25    the remote when he put a flashlight right on the remote for

1    the county prosecutor, Bambi Page-Couch, to see?  Why are

2    they lying about this?

3         Just tell the truth.

4         Is it because they realized that they overreacted and

10:21:31  5    fired a shot that -- a barrage of 14 shots that they

6    shouldn't have done, and they needed a way to protect

7    theirselves and justify by having something that could

8    possibly look like a gun?

9         This is not abstract.  This is real, folks.

10:21:54 10         And you understand that Mr. Downey didn't even address

11   all the inconsistent statements that Frazier made in this

12   case.

13        Why does he need to talk about extending the arm,

14   pointing, showing objects?  You know, extending the arm,

10:22:20 15   lifting the shirt, brandishing?  Why did Frazier need to

16   tell the investigators this after the shooting?

17        Because it makes it look like it's justifiable to use

18   deadly force.

19        But then, when the other two deputies that were there

10:22:39 20   consistently said they did not see any of that, they did not

21   see any of that movement, they did not see an object, he had

22   to conform his story to what those other two deputies

23   claimed so they can all be on the same page, just so they

24   can all be on the same page as to, they saw what appeared to

10:23:04 25   be a Glock.

1          So a trial is a search for the truth.  Without the

2     truth, you can't make a decision that supports the defense

3     side.

4          There were so many misrepresentations.  So many

10:23:26  5     contradictions in this case.  So many efforts to subterfuge

6     reality.

7          Mr. Downey could not explain, Cory Momchilov could not

8     explain, nobody in the last five years can explain how that

9     sound could have come from anywhere else or anyplace else

10:23:57 10     than a gun.

11          And Frazier put himself in a position of danger.  The

12     other two knew better.  Even the rookie, Knee, was smart

13     enough not to run into that room, because they had the

14     opportunity outside of the room to communicate, to take

10:24:20 15     cover, to assess their situation, to be able to react.

16          Frazier was not supposed to be in that room.  They

17     both said that.  And it set, in the chain of events, a

18     horrible, tragic, and unnecessary shooting death of

19     Brian Garber.  A young man who had trouble.

10:24:45 20          But, yes, so there was some violence at the house an

21     hour and a half earlier with his wife and his mother.  They

22     didn't want him to be arrested and put in jail for the

23     night.  They wanted to get some medical health -- mental

24     health treatment.

10:25:05 25          They were over-blowing what happened in that.

1    Connie Garber said that, you know, she didn't need any

2    medical attention.

3    Sara Knowlton told you he didn't strangle her.  He had

4    his hands on his collarbone.

10:25:24  5    None of that matters, folks.  What matters is what

6    happened in the room, and what happened in the room was

7    wrong, clearly and simple.  And then there were lies made to

8    try to cover it up.

9    And the lies were from this man, Defendant Frazier,

10:25:37 10    who has to live not with the idea that he killed somebody,

11    but he has to live with the notion that he is guilty of

12    doing something wrong.  That's what he --

13    You saw the fake tears up there.  You heard about the

14    doctor who analyzed him and said he had some serious

10:26:03 15    medical -- mental health issues.

16    You heard his supervisor talk about low tolerance,

17    frustration, he's not believable.  But they don't want to

18    talk about that.

19    They just want to talk that they serve their

10:26:23 20    community, they're good cops, that Frazier has all of these

21    commendations, and you should believe them.  That's their

22    case.

23    So we ask you, once, again, to do the right thing.  To

24    find him liable based on the instructions that the Court

10:26:41 25    gave you, and award significant damages to help his children

1  live a life that will be -- somehow compensate for them.

2  And they knew that they got -- that a court of law, a jury,

3  gave them justice, this family.

4      Thank you very much.

10:27:15  5      THE COURT:  Ladies and gentlemen of the jury,

6  let me now finish by explaining some things to you about

7  your deliberations in the jury room.

8      The first thing that you should do in the jury room is

9  to choose someone to be your foreperson.  This person will

10:27:30 10  help you guide your discussions and will be your

11  spokesperson for you here in court.

12      Once you start deliberating, do not -- do not talk to

13  the courtroom deputy or to me or to anyone else about the

14  case.  We must communicate in writing.  Write down your

10:27:50 15  message, have the foreperson sign it, and then give it to

16  the courtroom deputy.  That's Mr. DeVan.

17      He will give it to me, and I will respond as soon as I

18  can.

19      I may have to talk to the lawyers about what you've

10:28:05 20  asked, so it may take me some time to get back to you.

21      One more thing about messages.

22      Do not ever write down or tell anyone how you stand on

23  your vote.  For example, if there is some split among the

24  jury at the time, please don't disclose that.  That should

10:28:27 25  remain secret until you are finished.

Conclusion of Jury Charge

607

1       Remember that if you elected to take notes during the

2       trial, your notes should be used only as memory aids.  You

3       should not give your notes greater weight than your

4       independent recollection of the evidence.

10:28:46  5       You should rely upon your independent recollection of

6       the evidence, or lack of evidence, and you should not

7       unduly -- be unduly influenced by the notes or other jurors.

8       Notes are not entitled to any more weight than the memory or

9       impression of each juror.

10:29:02 10       Whether you took notes or not, each of you must form

11       and express your own opinions as to the facts in this case.

12       If any reference by the Court or by counsel to matters

13       of evidence does not coincide with your recollection, it is

14       your recollection which should control your deliberations.

10:29:25 15       Remember that you must make your decision based only

16       on the evidence that you saw and heard here in court.

17       During your deliberations, you must not communicate

18       with or provide any information to anyone by means -- by any

19       means about the case.

10:29:42 20       You may not use any electronic devices or media, such

21       as telephone, cell phone, Smartphone, iPhone, BlackBerry, or

22       computer, the Internet, any Internet service, or any text or

23       instant messaging service, any Internet chat room, blog, or

24       website, such as Facebook, My Space, Instagram, Snapchat,

10:30:06 25       LinkedIn, YouTube or Twitter, to communicate to anyone any

1    information about this case, or to conduct any research

2    about this case, until I accept your verdict.

3        In other words, you cannot talk to anyone on the

4    phone, correspond with anyone, or electronically communicate

10:30:23  5    with anyone about the case.  You can only discuss the case

6    in the jury room with your fellow jurors during

7    deliberation.

8        I expect you will inform me as soon as you become

9    aware of another juror's violation of these instructions.

10:30:38  10    You may not use these electronic means to investigate

11    or communicate about the case, because it's important that

12    you decide this case based solely on the evidence presented

13    in this courtroom.

14        Information on the Internet or available through

10:30:53  15    social media might be wrong, incomplete, or inaccurate.  You

16    are only permitted to discuss the case with your fellow

17    jurors during deliberations because they have seen and heard

18    the same evidence you have.

19        In our judicial system, it's important that you're not

10:31:08  20    influenced by anything or anyone outside of this courtroom.

21    Otherwise, your decision may be based on information known

22    only by you, and not -- and not your fellow jurors or the

23    parties in the case.  This would unfairly and adversely

24    impact the judicial process.

10:31:29  25        You should know that if this admonition is violated,

1    there could be a mistrial.  A mistrial means that the case

2    is stopped before it is finished and must be retried again

3    at a later date.

4         This can lead to a great deal of expense for the

10:31:46  5    parties and for the taxpayers; namely, you and your

6    neighbors.  No one wants to see money, especially tax

7    dollars, wasted.

8         If a mistrial were to be declared based on a violation

9    of this admonition, the juror responsible could be required

10:32:04 10    to pay the cost of the first trial and could be pushed for

11    contempt of court.

12         In summary, make your decision based only on the

13    evidence that you saw and heard here in this court.

14         When you enter the jury room following the arguments,

10:32:20 15    you are free to talk about the case.  In fact, it's your

16    duty to talk with each other about the evidence and to make

17    every reasonable effort you can to reach a unanimous

18    agreement.

19         Talk with each other, listen carefully and

10:32:33 20    respectfully to each other's views, and keep an open mind as

21    you listen to what your fellow jurors have to say.  Try your

22    best to work out your differences.  Don't hesitate to change

23    your mind if you are convinced that other jurors are right

24    and you are wrong.

10:32:52 25         But do not ever change your mind just because other

1    jurors see things differently or just to get the case over

2    with.  In the end, your vote must be exactly that -- your

3    own vote.

4        It's important that you reach a unanimous agreement,

10:33:10  5    but only if you can honestly and in good conscience -- if

6    you can do so honestly and in good consensus.

7        No one will be allowed to hear your discussions in the

8    jury room, and no record will be made of what you say.  So

9    you should all feel free to speak your minds.

10:33:32 10       Listen carefully to what everyone else has to say, and

11   then decide for yourself if the plaintiff has proven her

12   claims by a preponderance of the evidence.  Your sole

13   interest is to seek the truth from the evidence in this

14   case.

10:33:49 15       You will have a copy of these instructions with you in

16   the jury room for your assistance during deliberations.

17   These instructions should answer any questions that you

18   have.

19       However, if during your deliberations you should

10:34:03 20   desire to communicate with the Court, please reduce your

21   message or question into writing, signed by the foreperson,

22   and pass the note to the courtroom deputy, who will bring

23   you -- bring it to my attention.

24       I will then respond as promptly as possible, either in

10:34:17 25   writing or by having you return to the courtroom so that I

1    can address you orally.

2         Remember at all times, you are not partisans.  You are

3    judges.  The judges of the facts.  Your sole interest is to

4    seek the truth from the evidence in the case.

10:34:34  5         Your verdict, whether for the plaintiff or defendant,

6    must be unanimous.

7         This means that to find for the plaintiff on her claim

8    with respect to Defendant Frazier, every one of you must

9    agree that the plaintiff has proved that claim against

10:34:50 10   Defendant Frazier by a preponderance of the evidence.

11        Either way, your verdict must be unanimous.

12        I have prepared verdict forms that you should use to

13   record your verdict.  The form reads as follows:

14        Roman Numeral I, Liability, A, excessive force.

10:35:18 15        We the jury, on plaintiff's excessive force claim

16   under 42, United States Code, Section 1983, find the

17   following as to Defendant Frazier:

18        Check 1, liable, not liable.

19        If you find defendant not liable on the claim, stop

10:35:38 20   here, and sign the verdict below.

21        If you find the defendant liable on the claim,

22   continue to Sections II and III.

23        Next II, Survivorship Damages.  If you find

24   Defendant Frazier liable, enter an amount below that will

10:35:54 25   fairly and reasonably compensate the estate of Brian Garber

1    for the conscious pain, suffering, emotional and mental harm

2    that Brian Garber may have experienced during the events at

3    issue, and economic harm that may have been incurred.

4         Please state your answer in dollars and cents,

10:36:14  5    survivorship damages, and then the line for the amount.

6         Roman Numeral III, Wrongful Death Damages.

7         If you find Defendant Frazier liable, enter an amount

8    that will fairly and reasonably compensate the beneficiaries

9    of the estate for the injuries and losses to them resulting

10:36:32  10   from the wrongful death of Brian Garber.

11        Please state your answer in dollars and cents,

12   wrongful death damages, wrongful death damages, and then a

13   line for the number to be inserted.

14        Each of us jurors concurring in the said verdict, sign

10:36:51  15   his or her name hereto on this blank -- whatever date you

16   reached the verdict -- of February, in the year 2019.  And

17   then there is a line for the signature of the jury

18   foreperson, and each of you jurors.

19        You will take the interrogatories and verdict form to

10:37:16  20   the jury room, where you have -- and when you have reached

21   unanimous agreement as to your verdict, you will have your

22   foreperson fill in each answer, sign his or her name, and

23   date the form in the bottom right-hand corner.  Each of you

24   will then sign the interrogatories and verdict form.

10:37:33  25        Please complete these documents in ink.  Unless all of

1    you agree, you may not return an answer to any question.

2          After you've all signed the appropriate documents,

3    ring the jury buzzer, which is on the wall in the jury room,

4    and you will be returned to the courtroom as soon as we have

5    gathered all the parties and their counsel.

6          Let me finish up by repeating something that I told

7    you earlier.

8          Nothing that I have said or done during this trial was

9    meant to influence your decision in any way.  Nothing said

10   in these instructions is meant to suggest or convey in any

11   way what verdict I think you should find.

12         What the verdict shall be is the sole and exclusive

13   duty and responsibility of the jury.  You shall decide for

14   yourselves if plaintiff has proved by a preponderance of the

15   evidence its claims against the defendant.

16         The courtroom deputy will escort you to the jury room,

17   and you will then receive a copy of the Court's charge, the

18   verdict form and the exhibits that have been admitted into

19   evidence.

20         If a juror is not following the law as I have just

21   given it to you, the rest of you must make sure that I am

22   told.

23         With two exceptions, all the exhibits are in paper.

24         Those exceptions are the remote, and there's also a

25   very short audio recording.

1    If you wish to see the remote, there are special

2    procedures for handling that remote.  Let Mr. DeVan know.

3    He will bring it in, and he will handle it according to

4    those special procedures as you view it.

10:39:22  5    If it's necessary, or if you wish to listen to the

6    audio that has been admitted into evidence, then you will

7    need some special equipment.  Let Mr. DeVan know, and

8    arrangements will be made for you to listen to the audio.

9    Counsel for the plaintiff, have I read the

10:39:44  10   instructions accurately as agreed to by counsel, except with

11   objections being reserved?

12         MR. GILBERT:  Yes, Your Honor.

13         THE COURT:  And counsel for the defendant,

14   have I read the instructions accurately as agreed to by

10:40:01  15   counsel, reserving the objections that have been previously

16   made?

17         MR. DOWNEY:  Yes, Your Honor.

18         THE COURT:  All right.  Very well.

19   I do want to just make one final comment.

10:40:11  20   And that is, one of the benefits of presiding at a

21   trial is that I get to spend time watching the jurors and

22   seeing if they're paying attention.

23   And in the course of this trial, I am very impressed

24   with the attention that you have given to the witness

10:40:36  25   testimony, to the exhibits that have been presented to you,

1    and to the arguments of counsel.

2         And on behalf of the parties and counsel and myself,

3    I'm very grateful for that.

4         At the beginning of the selection process, I told you

10:40:52  5    that jury selection -- or serving on a jury is a very high

6    civic duty.  And you're probably aware of this, but this

7    right to a trial by jury is in our constitution.  It's part

8    of the Seventh Amendment.  And the Seventh Amendment says

9    that the right to trial by jury in civil cases will be

10:41:15 10   preserved.

11        The Seventh Amendment lives and has meaning in this

12   courtroom today because of what you're doing.  And because

13   of this very important role that you are playing, we are all

14   very, very grateful.

10:41:31 15        Do counsel for plaintiff have anything further before

16   the jury is sent to deliberation?

17              MR. GILBERT:  Nothing further.

18              THE COURT:  Counsel for the defendant,

19   anything further before the jury is sent to deliberation?

10:41:42 20              MR. DOWNEY:  No, Your Honor.

21              THE COURT:  This Court is in recess pending

22   the return of the verdict.

23        And, Mr. DeVan, will you please escort the jury back

24   to the jury room.

10:41:54 25              DEPUTY CLERK:  All rise.

```
 1                           - - -

 2           (The jury retired to begin deliberations at 10:40 a.m.)

 3                           - - -

 4                    THE COURT:  If you would, just be seated.

 5           Will counsel be waiting here for the jury?

 6                    MR. GILBERT:  We will give you a cell phone.

 7                    THE COURT:  All right.

 8                    MR. GILBERT:  Just in case we leave.

 9                    THE COURT:  Before you -- before you go

10     leave -- before you go -- or I would say whether you're

11     going or not, because you may want to go get something to

12     eat or otherwise be outside the courtroom --

13                    MR. GILBERT:  Okay.

14                    THE COURT:  -- please give Mr. DeVan your cell

15     phone numbers.  And as soon as the jury comes back with a

16     verdict, or if they have a question, then we'll contact you

17     so that we can proceed as expeditiously as possible.

18           And I do want to thank counsel for their good work in

19     this trial, for their professionalism, for their

20     cooperation.  It's made my job much easier than otherwise.

21           So there being nothing further for either side at this

22     time?

23                    MR. DOWNEY:  Nothing further from defense,

24     Your Honor.

25                    THE COURT:  We're in recess until we have a
```

1    verdict or a question.

2                    MR. GILBERT:  Thank you.

3                    MR. DOWNEY:  Thank you, Your Honor.

4                    THE COURT:  Just one more thing for the

10:44:05  5    record.

6         Will counsel affirm for me that they've reviewed the

7    exhibits, and they concur that the exhibits that are being

8    sent back to the jury room are the exhibits that have been

9    admitted?

10:44:18 10        Plaintiffs?

11                   MS. GREENE:  Yes, Judge.

12                   THE COURT:  And defendants?

13                   MS. WILLIAMSON:  Yes, Your Honor.

14                   THE COURT:  All right.  Very well.

10:44:23 15

16                   (Proceedings in recess at 10:43 a.m.)

17                         - - -

18                   DEPUTY CLERK:  All rise.

19                         - - -

13:18:16 20                   (Proceedings reconvened at 1:20 p.m.)

21                   (In Open Court - Defendant Present)

22                         - - -

23                   THE COURT:  The jury has asked to see the

24    video/audio that was admitted into the evidence.

13:18:47 25        We will bring the jury out.  It will be played for

                    1    them.  No comment by the Court.  No comment by the counsel.

                    2        And after they're satisfied that they have had their

                    3    opportunity, we'll send them back to continue to deliberate.

                    4        Bring in the jury.

13:19:07            5                    DEPUTY CLERK:  All rise for the jury.

                    6                              - - -

                    7           (In Open Court - Defendant and Jury Present)

                    8                              - - -

                    9                    THE COURT:  This is exhibit number --

13:19:25           10                    MS. WILLIAMSON:  1013, I think.

                   11    Defendant's 1013.

                   12                    THE COURT:  1013.  Thank you.

                   13                    DEPUTY CLERK:  Please be seated.

                   14                    QUESTION FROM THE JURY

13:20:34           15                    THE COURT:  The jury has requested the

                   16    opportunity to review that portion of defendant's

                   17    Exhibit 1013 admitted into evidence.

                   18        The jury is back in the courtroom, counsel is also

                   19    present, and arrangements have been made to play just that

13:20:52           20    portion of the exhibit that has been admitted.

                   21                    DEPUTY CLERK:  There's two little portions.

                   22    Two separate ones.

                   23                    THE COURT:  All right.  And I understand that

                   24    counsel -- excuse me -- counsel have reviewed the exhibit,

13:21:03           25    and they're satisfied that what will be displayed on the

1    monitors will be that which was admitted, correct.

2         Plaintiffs?

3              MR. GILBERT:  Correct.

4              THE COURT:  Defendants.

13:21:13  5              MS. WILLIAMSON:  Correct.

6              THE COURT:  Please proceed.

7          (Video portion 1 played in open court.)

8          (Video portion 2 played in open court.)

9              THE COURT:  Is the jury satisfied that they've

13:22:38 10   had an opportunity to review this exhibit?

11            (Jury responds in the affirmative.)

12             THE COURT:  You are?

13            (Jury responds in the affirmative.)

14             THE COURT:  Okay.

13:22:53 15      Thank you.  And you will return and continue your

16   deliberations.

17             DEPUTY CLERK:  All rise.

18                      - - -

19     (The jury retired to continue deliberations at 1:22 p.m.)

13:23:35 20                      - - -

21             THE COURT:  Just please be seated.  We'll wait

22   for Mr. DeVan to get back.

23             DEPUTY CLERK:  I'm back.

24             THE COURT:  All right.

13:23:43 25      Mr. DeVan has your contact information in the event

|   |   |
|---|---|
| 1 | you're not in the courtroom and your presence is needed? |
| 2 | MR. GILBERT:  Yes. |
| 3 | THE COURT:  Well, very well.  Then we are in |
| 4 | recess until we hear from the jury again. |
| 13:23:57  5 | MR. DOWNEY:  Thank you, Your Honor. |
| 6 | MR. GILBERT:  Thank you. |
| 7 | DEPUTY CLERK:  All rise. |
| 8 | - - - |
| 9 | (Proceedings in recess at 1:26 p.m. ) |
| 15:15:59  10 | - - - |
| 11 | DEPUTY CLERK:  All rise. |
| 12 | - - - |
| 13 | (Proceedings reconvened at 3:25 p.m. ) |
| 14 | - - - |
| 15:24:39  15 | DEPUTY CLERK:  Please be seated. |
| 16 | THE COURT:  I'm advised that the jury is ready |
| 17 | to return its verdict. |
| 18 | Mr. DeVan, will you please bring the jury to the |
| 19 | courtroom. |
| 15:24:51  20 | DEPUTY CLERK:  All rise for the jury. |
| 21 | (The jury entered the courtroom.) |
| 22 | DEPUTY CLERK:  Please be seated. |
| 23 | - - - |
| 24 | (In Open Court - Defendant and Jury Present) |
| 15:27:21  25 | - - - |

1          THE COURT:  Who speaks as the foreperson for

2     this jury.

3          Could you please stand and identify yourself by your

4     jury number.

15:27:31 5          JURY FOREPERSON:  Juror Number 4.

6          THE COURT:  Has the jury unanimously agreed

7     upon its verdict.

8          JURY FOREPERSON:  Yes, we have.

9          THE COURT:  Please hand the verdict form to

15:27:41 10    Mr. DeVan.

11         The verdict will now be published in open court.

12    Please pay close attention as the verdict is published.

13         Following publication, the jury may be polled.

14         Each juror may be asked individually whether the

15:28:31 15    verdict as published constitutes his or her individual

16    verdict in all respects.

17         Mr. DeVan, please publish the verdict.

18         DEPUTY CLERK:  Liability, the excessive force

19    claim.

15:28:53 20         "We the jury, on the plaintiff's excessive force claim

21    under 42 U.S.C. 1983, find the following as to

22    Defendant Frazier:  Not liable.

23         "Each of us jurors concurring the said verdict assigns

24    his or her name hereto on this 22nd date of February, in the

15:29:14 25    year 2019, signed by the foreperson and the seven other

1    jurors."

2                    THE COURT:  Counsel for the plaintiffs, do you

3    wish to have the jury polled.

4                    MR. GILBERT:  Yes.

15:29:36  5           THE COURT:  Juror Number 1, please rise.

6          Is the verdict as published your individual verdict in

7    all respects?

8                    JUROR 1:  Yes.

9                    THE COURT:  Thank you.

15:29:49 10           Juror Number 2.

11         Is the verdict as published your individual verdict in

12   all respects?

13                   JUROR 2:  Yes.

14                   THE COURT:  Juror Number 3.

15:29:58 15         Is the verdict as published your individual verdict in

16   all respects?

17                   JUROR 3:  Yes.

18                   THE COURT:  Juror Number 4.

19         Is the verdict as published your individual verdict in

15:30:11 20   all respects?

21                   JUROR 4:  Yes.

22                   THE COURT:  Juror Number 5.

23         Is the verdict as published your individual verdict in

24   all respects?

15:30:21 25                   JUROR 5:  Yes.

```
             1              THE COURT:  Juror Number 6.

             2         Is the verdict as published your individual verdict in

             3    all respects?

             4                   JUROR 6:  Yes.

15:30:30     5              THE COURT:  Juror Number 7.

             6         Is the verdict as published your individual verdict in

             7    all respects?

             8                   JUROR 7:  Yes.

             9              THE COURT:  And Juror Number 8.

15:30:41    10         Is the verdict as published your individual verdict in

            11    all respects?

            12                   JUROR 8:  Yes.

            13              THE COURT:  The Court will file and record the

            14    verdict.

15:30:58    15         I hereby discharge the jury with the thanks of the

            16    Court and the thanks of the parties.

            17                   DEPUTY CLERK:  All rise.

            18                   (The jury exited the courtroom.)

            19                   DEPUTY CLERK:  Please be seated.

15:31:52    20              THE COURT:  On behalf of myself and my staff

            21    and the Court, I want to thank and compliment counsel for

            22    their professionalism, civility, and cooperation in this

            23    matter.

            24         Counsel for the plaintiff, do you have anything

15:32:12    25    further for the Court at this time?
```

1          MR. GILBERT:  Nothing further.

2               THE COURT:  Counsel for the defendant,

3     anything further for the Court at this time?

4               MR. DOWNEY:  No.

15:32:18  5          Thank you, Your Honor.

6               THE COURT:  Do counsel wish to speak to the

7     jurors?

8               MR. GILBERT:  Yes.

9               THE COURT:  I will convey your request to the

15:32:26 10    jurors, and I will advise you as to whether or not they

11    choose to speak to you.

12              MR. GILBERT:  Thank you.

13              THE COURT:  There being no further business

14    before the Court in this case, we are adjourned.

15:32:39 15              DEPUTY CLERK:  All rise.

16                             - - -

17          (Proceedings concluded at 3:32 p.m.)

18

19              **C E R T I F I C A T E**

20

21          I certify that the foregoing is a correct transcript

22    from the record of proceedings in the above-entitled matter.

23

24    */s/ Donnalee Cotone          21st of April, 2019*
      DONNALEE COTONE, RMR, CRR, CRC                    DATE
25    Realtime Systems Administrator